IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON SODEMANN,

                Plaintiff,                OPINION AND ORDER

v.

                                       22-cv-374-wmc

JOSHUA MELNICK, DANA
MILLER, and MELISSA
POLLESCH,

                Defendants.

---

Plaintiff Jason Sodemann claims that Sergeant Joshua Melnick harassed him for nearly a year while he was incarcerated at Fox Lake Correctional Institution in violation of the First, Eighth, and Fourteenth Amendments, as well as Wisconsin state law. He also claims that Sergeants Dana Miller and Melissa Pollesch failed to protect him from Melnick in violation of the Eighth Amendment and state law. (Dkt. #18 at 9.) Defendants have filed a motion for partial summary judgment on exhaustion grounds as to: (1) Soderman's claim that Melnick performed inappropriate pat down searches on him in September 2021; and (2) his claim that Melnick dissuaded him from filing a grievance by taunting and threatening him.[1] (Dkt. #31.) For the following reasons, the court will deny the motion.

BACKGROUND

A. Alleged Facts

Sodemann alleges that Sergeant Melnick, the regular sergeant assigned to his

---

[1] While Sodemann filed this lawsuit without counsel, he was able to retain counsel after defendants filed their motion for summary judgment on exhaustion grounds. (Dkt. ##34, 35.) There is no dispute that Sodemann exhausted all administrative remedies as to claims against defendants Miller and Pollesch. (*See* dkt. ##32 at 2; 43 at 6.)

housing unit at Fox Lake, began harassing him in early 2021, making sexual comments and gestures towards him almost daily, including comments in front of other prisoners indicating that Sodemann was gay. As a result, Sodemann alleges he experienced anxiety, panic attacks, and loss of sleep, as well as felt unsafe at the institution.

Relevant to defendants' motion for partial summary judgment on exhaustion grounds, Sodemann specifically alleges that Melnick conducted inappropriate pat down searches on him in September 2021 by pushing "hard on [his] pants" and "on [his] groin region." (Dkt. #11 at 2.) In November 2021, Sodemann further claims that when he threatened to report Melnick "if he continued to make homosexual comments" about him, Melnick responded that "he would make [his] life hell," then tossed Sodemann's cell, leaving him to clean it up, while telling Sodemann's roommate that he was gay. (*Id.* at 3.)

B. **Wisconsin's inmate complaint review system**

Under the Prison Litigation Reform Act ("PLRA"), prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Moreover, the prisoner must take each step in the prison's administrative rules to exhaust remedies. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requires (1) following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all of the necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005). Finally, "[e]xhaustion is necessary even if … the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir.

2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.").

The purpose of this exhaustion requirement is to afford prison administrators a fair opportunity to resolve a prisoner's grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Thus, a prisoner's failure to exhaust constitutes an affirmative defense, which defendant must prove. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). At summary judgment, a defendant must specifically show that there is no genuine dispute of material fact as to the plaintiff's failure to exhaust and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

In Wisconsin, to exhaust administrative remedies, a prisoner must follow the Inmate Complaint Review System ("ICRS") process set forth in Wisconsin Administrative Code Chapter DOC 310, which begins with an inmate filing a grievance with the ICE within 14 days after the incident giving rise to the grievance. Wis. Admin Code § DOC 310.07(2). The ICE may return a complaint if it does not satisfy the criteria found in § 310.07(1), (3), (4), or (5). § DOC 310.10(5). The inmate complaint may only contain "one clearly identified issue" that the inmate seeks to raise. § DOC 310.07(5).

Exhausting administrative remedies include following the rules for filing an appeal. *Pozo*, 286 F.3d at 1025. A prisoner may file an appeal to the corrections complaint examiner within 14 days of the date of the decision on the inmate complaint or, if the inmate does not receive a decision, 45 days after the date the ICE enters the complaint. §§ DOC 310.09(1), 310.11(3).

As for plaintiff's state-law claims, the PLRA's exhaustion requirement does not apply. However, Wisconsin imposes a similar exhaustion requirement for state law claims, prohibiting prisoners from filing "a civil action or special proceeding . . . with respect to the prison or jail conditions in the facility in which he is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections had promulgated by rule." Wis. Stat. § 801.02(7)(b). Because Wisconsin's law is based on the federal PLRA, a court may take guidance from federal PLRA case law. *See Compton v. Cox*, No. 12-cv-837-jdp, 2017 WL 933152, at *6 (W.D. Wis. Mar. 8, 2017) (plaintiff "is free to use federal PLRA case law in analyzing the Wisconsin version").

Relevant here, inmates are only required to exhaust administrative remedies that are available to them. *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative procedure is unavailable if, among other reasons, prison officials "thwart inmates from taking advantage of a grievance process through . . . intimidation." *Id.* at 644.

C. **Sodemann's inmate complaint**

Sodemann filed one inmate complaint about Melnick, received by Fox Lake on May 20, 2022. In it, he generally alleges daily sexual harassment beginning in November 2021. In support, Sodemann gave examples of verbal harassment, indicating that Melnick once "groped himself" while telling Sodemann to "suck it," and told other inmates "about having sex with [Sodemann's] mother and [his] sister," calling his mother "a prostitute." (Dkt. #33-2 at 10.) Sodemann also reported being "ridiculed by other inmates" because Melnick harassed him publicly. (*Id.*) In accordance with the Prison Rape Elimination Act

4

("PREA"), 34 U.S.C. §§ 30301-09, given the nature of the complaint, the ICE dismissed it, but referred it to the warden for review. Sodemann appealed about nine days later, on May 29, 2022, complaining that he had been told "Madison" had taken over the investigation, but no PREA investigator had taken his statement yet. (Dkt. #33-2 at 11.)

OPINION

Defendants assert that Sodemann's inmate complaint failed to give *any* notice of a September 2021 pat search or November 2021 retaliation claims against Melnick, referring instead to Melnick's ongoing *verbal* harassment and gestures of a sexual nature. To properly exhaust a retaliation claim, an inmate complaint must, "at a minimum ... identify two things: the protected conduct that provoked the retaliation and the retaliatory act." *Tate v. Litscher*, Case No. 16-C-1503, 2018 WL 2100304 at * 4 (E.D. Wis. May 5, 2018) (citations omitted, emphasis in original). Yet there is no reference to the cell search or retaliation in Sodemann's inmate complaint about Melnick or any information that could provide a basis for the ICE to infer that Sodemann was seeking to grieve a pat search from September 2021, in addition to Melnick's ongoing verbal harassment. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (explaining that a prisoner must give the prison notice of a problem and an opportunity to address it).

However, Sodemann has established a genuine dispute of material fact as to whether his administrative remedies were available to him with Melnick allegedly, credibly threatening him if Sodemann were to report the inappropriate sexual touching in September 2021, then began to verbally harass him daily. A remedy is not available to a prisoner who is "prevented by threats or other intimidation by prison personnel from

seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (citations omitted). To prevail, a plaintiff must show that "a person of ordinary firmness would have been deterred from filing a grievance" and that the plaintiff "was in fact deterred." *Id.* at 621. If the jury were to credit Sodemann's version of events, both components are at least arguably fully met here.

To begin, Sodemann was deterred. Sodemann attests without dispute that Melnick threatened to "make [his] life hell," tossed his cell, and taunted him as gay in front of his roommate in immediate response to Sodemann's statement that he was going to report Melnick for sexual harassment. (Dkt. #43-1 at ¶¶ 15-19.) Melnick then proceeded to harass Sodemann almost daily. This conduct, as well as Sodemann having witnessed Melnick make good on similar threats towards another inmate, supports his having been both objectively and subjectively deterred from reporting until *after* Melnick's repeated threats had dissipated -- that is after Melnick was moved away from his housing unit *and* he later heard that Melnick was no longer at the institution at all. (*Id.* at ¶¶ 15-29.)

Defendants suggest that Sodemann is not a person of "ordinary firmness" because the other inmate Melnick allegedly targeted had reported him at some point, but that inmate's circumstances are not developed in this record; plus, it is unknown what position this inmate was in when he felt safe to report his harasser. Regardless, that another inmate reported Melnick, who was then removed from his post, cuts as much against defendants at this point as it works in their favor, since an inference might be drawn that Melnick was an officer capable of the pervasive, harassing conduct Sodemann alleges he endured, and

6

thus, capable of intimidating and of a mind to intimidate inmates generally.

Accordingly, the court will deny defendants' motion.

## ORDER

IT IS ORDERED that:

1) Defendants' motion for partial summary judgment on exhaustion grounds (dkt. #31) is DENIED.

2) To allow the parties sufficient time to prepare dispositive motions in light of the court's ruling, the dispositive motions deadline is extended to June 24, 2024. The remaining case deadlines remain in place at this time.

Entered this 10th day of May, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge