IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JASON SODEMANN,

                              Plaintiff,                          OPINION AND ORDER

        v.
                                                                 22-cv-374-wmc

JOSHUA MELNICK,
DANA MILLER, and
MELISSA POLLESCH,

                              Defendants.

Representing himself, plaintiff Jason Sodemann filed a complaint under 42 U.S.C.
§ 1983, claiming that the following officers violated his civil rights during his incarceration
by the Wisconsin Department of Corrections ("DOC"):  former Sergeant Joshua Melnick;
Sergeant Dana Miller; and Sergeant Melissa Pollesch.  (Dkt. #11.)  The court granted
Sodemann leave to proceed with Eighth Amendment claims against defendant Melnick for
repeatedly subjecting him to sexual harassment and for forcibly groping him during two
separate pat-down searches in September of 2021.  (Dkt. #18.)  The court also granted
Sodemann leave to proceed with a First Amendment retaliation claim and a Fourteenth
Amendment equal protection claim against Melnick.  (*Id*.)  In addition, the court granted
Sodemann leave to proceed with Eighth Amendment claims against defendants Miller and
Pollesch for failing to intervene after learning that Melnick was sexually harassing inmates.
(*Id*.)  Although the court also granted Sodemann leave to proceed with state-law claims
against all three defendants, he has since withdrawn those claims.  (Dkt. #84.)

Now represented by counsel, plaintiff Sodemann has filed a motion for partial
summary judgment with respect to defendants' affirmative defenses of mitigation and

contributory negligence on the grounds that neither apply to his remaining claims. (Dkt. #67.) In turn, defendants have filed their own motion for summary judgment on all of Sodemann's claims on the merits or, alternatively, under the doctrine of qualified immunity. (Dkt. #70.) For the reasons explained below, plaintiff's motion will be granted and defendants' motion will be denied.

FACTS[1]

### A. Background

Sodemann is currently incarcerated at the Fox Lake Correctional Institution ("Fox Lake"), where defendants Melnick, Miller, and Pollesch were all employed as correctional officers. In January 2021, defendant Melnick was assigned as the regular sergeant in Sodemann's housing unit at Fox Lake, Unit 5, until Melnick was placed on administrative leave without pay beginning in May 2022. (PPFOF ¶¶ 1, 53.) During this same time frame, Sergeant Miller worked in Unit 5 on the shift preceding Melnick's, although there was some overlap in their shifts. (DPFOF ¶¶ 15-18.) In addition, Miller worked with Melnick at least once a month when Miller picked up overtime shifts. (*Id*. at ¶¶ 19-20.)

---

[1] The facts are sharply disputed by the parties. Unless otherwise indicated, the facts set forth in this section are taken primarily from Defendants' Proposed Findings of Fact ("DPFOF") (dkt. #72) in support of their motion for summary judgment, as well as Plaintiff's Response to Defendants' Proposed Findings of Fact and Plaintiff's Additional Proposed Findings of Fact ("PPFOF") (dkt. #89). Moreover, subject to the objections raised in Defendants' Response to Plaintiff's Proposed Findings of Fact ("DRPPFOF") (dkt. #106), and except with respect to defendants' assertion of affirmative defenses, the court views these facts in a light most favorable to plaintiff as the non-movant. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128F.4th 871, 873 (7th Cir. 2025),

Finally, Sergeant Pollesch worked in Unit 5 on the same shift as Melnick two to three times per week. (*Id.* at ¶¶ 17-18, 64.)

**B. Sergeant Melrick's Sexual Harassment**

Sodemann contends that for nearly a year and a half, Sergeant Melnick called him derogatory names like "fag," "dike," "bitch," and "butt buddy," along with other crude comments on a daily basis indicating that Sodemann was homosexual. (PPFOF ¶ 2.) Melnick also told Sodemann to "shove" random items "up his ass" and to take showers with other inmates. (*Id.* at ¶ 3.) Similarly, Melnick made comments suggesting that Sodemann was having sex with another prisoner, gave that prisoner herpes, and used hemorrhoid cream as a lubricant. (*Id.* at ¶ 4.) Melnick often told Sodemann that he had "fucked" Sodemann's sister and his mother. (*Id.* at ¶ 5.) Melnick further made sexually harassing gestures directed at Sodemann, often grabbing his own groin region while telling Sodemann to "suck my dick bitch" (*id.* at ¶ 6), or putting his thumb and forefinger into an "OK" symbol and, when Sodemann looked at it, calling him a "fag." (*Id.* at ¶ 7.)

Sodemann claims that Melnick engaged in other, even more humiliating conduct. Specifically, in September 2021, he claims Melnick twice, forcibly groped Sodemann's upper thighs, groin, and genitals during pat-down searches. (*Id.* at ¶¶ 8-13.) Melnick even began one of those two searches by calling Sodemann a "dyke" or something similar, and during both searches, Melnick put a lot of pressure on Sodemann's groin region in particular, touching his genitals for several seconds. (*Id.* at ¶¶ 9, 10.) When Sodemann objected during one of those searches, Melnick also reportedly smirked at him. (*Id.* at

¶ 12.)  During the other search, Melnick allegedly giggled as he went over Sodemann's genital region with his hands.  (*Id*. at ¶ 13.)

Worse still, Melnick engaged in this behavior in front of other prisoners and staff throughout Fox Lake Unit 5, including the common hallway between the two sides of the unit.  (*Id*. at ¶ 16.)  After Melnick had been harassing Sodemann for some time, other prisoners also began to make sexually harassing comments to Sodemann or to otherwise ridicule him.  (*Id*. at ¶¶ 38-39.)  For example, several prisoners told Sodemann that he was "going to get fucked," which Sodemann interpreted as a personal threat.  (*Id*. at ¶ 39.)  Specifically, Sodemann worried that other prisoners would attack or sexually assault him if they thought he was gay.  (*Id*. at ¶ 40.)  He also worried that Melnick might try to force him to engage in sexual acts, as a former Fox Lake prison official had done to other prisoners.  (*Id*. at ¶ 41.)

As a result, Sodemann begged Melnick to stop sexually harassing him, but to no avail.  (*Id*. at ¶ 17.)  In particular, when Sodemann told Melnick in November 2021, that he would report his actions to other sergeants, Melnick threatened Sodemann that he would "make his life a living hell" if he did.  (*Id*. at ¶¶ 18-19.)  Melnick also immediately conducted a cell search, trashing Sodemann's cell, and just before doing so, Melnick commented to Sodemann's cellmate that all of the pictures of women on the cell wall must be his because Sodemann is gay.  (*Id*. at ¶ 20.)  After that, Sodemann was afraid that if he reported Melnick's sexual harassment, Melnick would further harass him or subject him to disciplinary action that would jeopardize his eligibility for educational programs and early release.  (*Id*. at ¶ 23.)

At summary judgment, Sodemann provides declarations from other prisoners, including Colin Habram and Spencer Potts, who corroborate his account of Melnick's sexual harassment. Specifically, Habram avers that as soon as Melnick became a sergeant on Unit 5, he began making inappropriate comments to inmates about having sex with their mothers and sisters. (Ex. 3, Habram Decl. (dkt. #89-3) at ¶ 9.) Habram also avers that Melnick constantly made homosexual remarks and targeted certain inmates, including Sodemann and himself. (*Id*. at ¶ 10.) For example, Habram heard Melnick refer to Sodemann as a "bottom bitch" and Habram's "butt buddy," inferring that they were in a homosexual relationship. (*Id*. at ¶¶ 10-13, 15.) Inmate Potts further overheard Melnick direct homosexual slurs towards certain inmates, including plaintiff Sodemann, his cellmate, Stephane Kingue, and Habram. (Ex. 7, Potts Decl. (dkt. #89-7) at ¶¶ 8-9.) Both Habram and Potts also heard Sodemann tell Melnick on numerous occasions to stop and leave him alone, but Melnick did not listen. (Ex. 3, Habram Decl. (dkt. #89-3) at ¶¶ 13, 22; Ex. 7, Potts Decl. (dkt. #89-7) at ¶ 11.)

### C. Injury

For his part, Melnick admits making the comments described by Sodemann, but disputes that his actions amounted to "sexual harassment," explaining that he intended the remarks as "jokes." (DRPPFOF ¶¶ 2-5.) However, it was not a joke to Sodemann, who contemporaneously reported feeling "humiliated and depressed," such that he wanted to put himself in segregation to escape Sergeant Melnick. (PPFOF at ¶ 44.) For Sodemann, who is not gay, Melnick's sexual harassment caused extreme distress, fear, anxiety, and insomnia. (PPFOF ¶¶ 37-51.) While defendants dispute that Sodemann experienced

5

anxiety, arguing that he is not medically trained and cannot diagnose himself (DRPPFOF ¶¶ 37, 40, 42-43, 45, 47-51), he can certainly testify to having those feelings. Regardless, Sodemann has also provided mental health records showing that he reported having panic attacks, difficulty sleeping, and constant worrying, among other symptoms, and was diagnosed with an anxiety disorder when he sought help after being sexually harassed by Melnick. (Ex. 8, Mental Health Records (dkt. #89-8) at 4.)

Other inmates also observed the impact of Sergeant Melnick's harassment on Sodemann. Potts avers that Sodemann "became more anxious and nervous when Melnick was working, which was nearly every day," and that Sodemann was paranoid he would be targeted. (Ex. 7, Potts Decl. (dkt. #89-7) ¶ 13.) Inmate James Cansler similarly observed that Sodemann became "more anxious and more withdrawn during this time," and described him as "like a scared dog who had been kicked and abused every time Melnick was working." (Ex. 4, Cansler Decl. (dkt. #89-4) ¶¶ 17-18.) Habram also noticed that "Melnick's repeated comments labeling [Sodemann] as homosexual bothered [him]," and that Sodemann became more anxious as the comments continued. (Ex. 3, Habram Decl. (dkt. #89-3) ¶ 23.)

### D.    Other Defendants' Knowledge of Melnick's Sexual Harassment

Although Sodemann was reluctant to complain for fear of retribution, other prisoners on Unit 5 began reporting Melnick's behavior. In particular, defendant Miller acknowledged during an internal investigation into Melnick's conduct that, in addition to Sodemann, at least two other prisoners from Unit 5 (Michael Bates and Stephane Kingue) had complained about Melnick making "gay-ass comments" and using other inappropriate

language that could be considered harassing or bullying. (Ex. 13, Miller Interview at DOC_0726 – DOC_0727 (Dkt. #90-1) at 58-59.) In February 2022, Sodemann also reported to Sergeant Miller that Melnick "should probably not be writing them petty conduct reports" if he was going to harass people sexually. (PPFOF at ¶ 26.) However, Miller disputes that he knew Melnick was sexually harassing Sodemann, nor does he recall Sodemann specifically mentioning any harassing comments by Melnick. (DRPPFOF ¶ 27.)

Sometime between January and February 2022, Habram also informed defendant Pollesch that Melnick was sexually harassing inmates, and "if he didn't stop, someone would turn him in, especially if he writes them petty conduct reports." (Ex. 3, Habram Decl. (dkt. #89-3) at ¶ 24.) Inmate Potts also personally observed Melnick sexually harassing inmates, including Sodemann, and that Sergeant Pollesch was not only close enough to Melnick during those occasions to see what he was doing, but hear what he was saying, yet she did nothing to stop Melnick. (Ex. 7, Potts Decl. (dkt. #89-7) at ¶ 14.) Pollesch denies that Habram ever informed her that Melnick was sexually harassing inmates and insists that she only overheard one arguably inappropriate comment by Melnick about another inmate's mother. (DRPPFOF ¶¶ 29, 33.)

The Prison Rape Elimination Act ("PREA"), Pub. Law No. 108-79, 117 Stat. 972 (Sept. 4, 2003), requires correctional agencies in the United States to mandate "zero tolerance toward all forms of sexual abuse and sexual harassment" towards prisoners. 28 C.F.R. § 115.11(a). "Sexual harassment" is defined to include:

1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and

2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

28 C.F.R. § 115.6.

Consistent with PREA, DOC has rules and policies in place to protect inmates from sexual abuse and sexual harassment. (PPFOF ¶ 60; DOC Exec. Dir. #72.) Those rules recognize that sexually harassing behavior is a serious breach in critical programs governing prison safety and security. (PPFOF ¶ 60.) Moreover, defendants Melnick, Miller, and Pollesch received regular training on sexual harassment, and they understood how serious and dangerous it can be for a staff member to sexually harass a prisoner. (*Id*. at ¶¶ 64-66.) Sergeant Miller even served as a PREA investigator and investigated complaints of inmate-on-inmate sexual assault and harassment. (*Id*. at ¶ 66.)

Finally, in May 2022, DOC began an investigation that was triggered when another inmate (Stephane Kingue) reported that Melnick made a sexually derogatory comment about his mother. (PPFOF ¶ 52.) Afterward Melnick was placed on administrative leave with pay and, as the investigation progressed, without pay. (*Id*. at ¶¶ 53-54.) Shortly thereafter, defendant Melnick resigned. (*Id*. at ¶ 55.) Plaintiff Sodemann was interviewed as part of the investigation into Melnick's behavior, and his notes were added to the investigation file. (DRPPFOF ¶ 56.) The investigation into the allegations of Melnick's "sexual abuse or sexual harassment" as defined by PREA, concluded on July 26, 2022, and was "substantiated; meaning, the allegation was investigated and determined that, more likely than not, it occurred." (Ex. 11, Investigation Letter (dkt. #91-3) at 2.)

8

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the nonmoving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (alteration adopted and quotation marks omitted). In reviewing the evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that someone deprived him of a right secured by the Constitution or the laws of the United States, and whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). Here, plaintiff claims that defendant Melnick violated his rights under the Eighth Amendment by subjecting him to sexual harassment and forcibly groping him during two, separate pat-down searches in September of 2021. As discussed below, plaintiff has adequately demonstrated substantial evidence that will require those claims proceed to trial. Plaintiff contends that Melnick also violated his rights under the First Amendment by retaliating against him and under the Fourteenth Amendment Equal Protection Clause by targeting him for mistreatment. This, too, will require a trial to resolve material disputes of fact. Finally, plaintiff claims that defendants Miller and Pollesch also violated the Eighth Amendment by failing to

9

intervene on his behalf and on behalf of other inmates that they knew or should have known were being sexually harassed in violation of PREA.  While hotly disputed, there is enough evidence offered by plaintiff, other inmates, and to a lesser extent by all three defendants to require those claims to go to trial as well.

## I.  Claims Against Melnick

### A.  Eighth Amendment -- Sexual Harassment

Plaintiff's primary claim is that defendant Melnick violated the Eighth Amendment by repeatedly subjecting him to sexual harassment amounting to psychological abuse. Defendant Melnick, who claims that his remarks were intended as jokes, disputes that his comments constituted sexual harassment and argues that he is entitled to qualified immunity.  (Dkt. #71, at 23.)  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is clearly established if it is sufficiently clear that a reasonable official would understand that his or her actions violate that right.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  While a case on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional").  Melnick argues that qualified immunity shields him

10

because plaintiff does not establish that he violated a clearly established right.  (Dkt. #71, at 23.)

The Eighth Amendment's prohibition of cruel and unusual punishment protects prisoners from conditions of confinement that "involve the wanton and unnecessary infliction of pain[.]"  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  This prohibition certainly includes acts that are "totally without penological justification."  *Hope*, 536 U.S. at 737 (citation omitted).  Melnick, who admits that he repeatedly made derogatory remarks towards plaintiff regarding his sexuality, argues that since he was just joking, his conduct was, at worst, merely "unprofessional."  He is simply wrong legally, as well as morally.  Certainly, "simple verbal harassment," standing alone, typically does not support a claim under the Eighth Amendment.  *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409, 423 (7th Cir. 2020).  However, verbal abuse and harassment by prison guards, including "calling an inmate 'derisive terms' like 'punk, fag, sissy, and queer,' thereby 'increas[ing] the likelihood of sexual assaults on him,'" may well rise to the level of cruel and unusual punishment.  *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) (quoting *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015)); *see also Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019) ("verbal harassment can rise to a level that violates the Eighth Amendment"); *Courtney v. Devore*, 595 F. App'x 618, 619 (7th Cir. 2014) (The Eighth Amendment prohibits "harassment unrelated to prison needs.") (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).

When viewed in the light most favorable to plaintiff as the nonmoving party, there is ample evidence from which a reasonable jury could conclude that defendant Melnick

violated the Eighth Amendment's clear prohibition on cruel and unusual punishment. Specifically, plaintiff presents evidence that Melnick repeatedly subjected him to extreme verbal harassment for over a year, publicly calling him sexually derogatory names and intentionally misidentifying him as homosexual in front of other inmates.  Plaintiff and other inmates will also testify that Melnick's verbal abuse was also accompanied by physical gestures in which he frequently grabbed his own groin area and told Sodemann to "suck" it.  While more difficult to connect the dots, a jury could infer on this record that a reasonable inmate in plaintiff's position was sufficiently verbally threatened and sexually harassed by other inmates as a result of Melnick's actions to place him in legitimate fear that he would be assaulted and causing him distress and anxiety.  *See Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009) ("The test for what constitutes 'cruel and unusual punishment' is an objective one.  It is not the actual fear of the victim, but what a 'reasonable' victim would fear.").

In addition to his own averment, plaintiff provides declarations from other inmates who witnessed Melnick's persistent, sexually-charged verbal abuse and its effect on plaintiff and others.  Plaintiff also presents an expert report from James A. Ferreira, who explains that sexual harassment of an inmate by a correctional officer of the sort described by plaintiff, occurring in front of other inmates and staff, puts the harassed inmate at risk of "severe abusive behavior" by other inmates and can lead to actions that are "violent and extremely dangerous," something of which both reasonable guards and inmates were surely aware, or again a jury could so find.  (Ex. 12, Ferreira Report (dkt. #99) at 3-4.)  Sexual harassment and abusive comments directed towards an inmate's family members and loved

12

ones similarly invites retaliation and "is one of the most dangerous violations correctional employees can commit while working in prison[.]" (*Id*. at 6.) As Ferreira notes, and this court would certainly consider instructing, PREA was enacted specifically to help address, if not eradicate, prisoner rape, sexual abuse, and harassment of all types in correctional facilities, which jeopardizes both safety and security. (*Id*.)[2]

As for Melnick's invocation of qualified immunity, the Seventh Circuit has repeatedly observed that "[i]nmates have long had a clearly established right to be free from intentionally inflicted psychological torment and humiliation unrelated to penological interests." *Lieser v. Kloth*, 933 F.3d 969, 703 (7th Cir. 2019) (citations omitted); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("The Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'") (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Leathers v. Johnson*, No. 18-cv-345, 2020 WL 4819051, at *4 (N.D. Ind. Aug. 19, 2020) (citing the Eighth Amendment right to be free from psychological torment and denying qualified immunity to a correctional officer whose sexual harassment exceeded the bounds of simple verbal abuse). The doctrine of qualified immunity does not otherwise protect officers whose conduct is so obviously reprehensible that no reasonable officer could have concluded that it was constitutionally permissible. *E.g., Taylor v. Riojas*, 592 U.S. 7, 8-9

---

[2] Although unlikely to be admissible, in Ferreira's opinion, the fact that defendant Melnick was placed on leave without pay during the DOC's investigation, which substantiated the complaints of sexual harassment and abuse against him, underscores the seriousness of his misconduct. (*Id*. at 7.)

13

(2020) (per curiam) (reversing a grant of qualified immunity where no reasonable correctional officer could have concluded that it was constitutionally permissible to house the plaintiff in deplorable, unsanitary conditions); *Hope*, 536 U.S. at 741 (shackling an inmate to a hitching post in a manner that unnecessarily and wantonly inflicted pain "was so obvious" that Eighth Amendment precedent gave the defendants fair warning that their conduct violated the Constitution).

Further, viewing the plaintiff's evidence as true and taking all reasonable inferences in the light most favorable to plaintiff, Melnick's words and actions exceeded "simple verbal harassment" and exposed plaintiff to additional harassment from other prisoners and increased danger of assault, causing plaintiff to suffer severe distress. Although defendants argue that there is no clearly established precedent prohibiting sexual harassment of a prisoner, the Seventh Circuit has held that a prison guard's sexual harassment of a male inmate in front of other prisoners exceeded simple verbal abuse and could have inflicted "significant psychological harm" in violation of the Eighth Amendment. *Beal*, 803 F.3d at 358-59. In other words, "[t]he proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect." *Id*. at 357.

In addition to PREA, it is undisputed that DOC has a policy that prohibits sexual harassment of prisoners by staff. Melnick received training on sexual harassment and knew or should have known that his conduct violated this policy and PREA, which mandates zero tolerance for such behavior in a correctional setting. Although violating prison policy does not, standing alone, constitute a constitutional violation, *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003), the existence of the policy expressly prohibiting sexual

harassment by prison staff undermines Melnick's claim that he was unaware sexual harassment of prisoners was wrong.   More to the point, because sexual harassment, if proved, is *malum in se*, "no reasonable officer could believe that the conduct did not violate the plaintiff's constitutional rights."  *Vasquez v. Cnty. of Kern*, 949 F.3d 1153, 1165 (9th Cir. 2020) (quoting *Fontana v. Haskin*, 262 F.3d 871, 882 n.8 (9th Cir. 2001)).

In determining whether a defendant's actions violated clearly established law, courts must view the evidence at summary judgment in the light most favorable to the nonmovant and may not weigh evidence or resolve disputed issues in favor of the moving party.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).   "[A] district court properly denies a motion for summary judgment based on qualified immunity when the facts, taken in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right."  *Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583, at *3 (7th Cir. July 21, 2023) (citing *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)); *see also Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial.").

In this case, there are obviously material questions of fact about whether plaintiff was subjected to sexual harassment that rose to the level of cruel and unusual punishment in violation of the Eighth Amendment.   Those disputes must be decided at trial.   In particular, because an inmate's right to be free from intentionally inflicted psychological torment and humiliation was clearly established at the time of Melnick's actions, summary

judgment must be denied on Melnick's assertion that he is entitled to qualified immunity from plaintiff's claim that he was sexually harassed in violation of the Eighth Amendment.

### B. Eighth Amendment -- Pat-Down Searches

Even if this sexual harassment were only considered by a jury for context, plaintiff also claims that defendant Melnick violated his Eighth Amendment rights during two, hands-on, pat-down searches that a jury could reasonably infer were calculated to cause pain and humiliation, if not Melnick's sexual gratification. Where searches are concerned, "a prisoner's expectation of privacy is extremely limited in light of the overriding need to maintain institutional order and security." *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). In particular, searches are penologically justified when reasonably related to finding contraband that threatens the safety and security of the prison. *Williams v. Schlacter*, No. 23-cv-708-jdp, 2024 WL 324395, at *2 (W.D. Wis. Jan. 29, 2024) (citation omitted). By contrast, a search conducted in "a harassing manner intended to humiliate and inflict psychological pain" violates the Eighth Amendment. *Calhoun*, 319 F.3d at 939. In other words, bodily searches that are "maliciously motivated, unrelated to institutional security, and hence totally without penological justification" are unconstitutional. *Jones v. Anderson*, 116 F.4th 669, 678 (7th Cir. 2024) (citation and internal quotation omitted).

Plaintiff has presented evidence that, after subjecting him to sexual harassment and homophobic slurs on a near daily basis for several months, defendant Melnick became physical when he groped plaintiff's groin and genitals during those two, pat-down searches that occurred in September 2021. Before one of the searches in early September 2021,

16

Sodemann testified that Melnick also referred to plaintiff by a homosexual slur. (Sodemann Dep. (dkt. #65) at 49.)  Then, with both hands, Melnick reportedly applied pressure to plaintiff's thighs and groin area for two to three seconds while also striking him in the scrotum to the point where it hurt.  (*Id*.)  And Melnick reportedly employed more force during a second, similar pat-down search that occurred later in September 2021.  (*Id*. at 50.)  Further, when plaintiff complained, Melnick smirked.  (*Id*.)  Another prisoner who observed one of the searches confirms that Melnick took an "unnecessary amount of time to pat down and squeeze [plaintiff's] inner thighs and groin region," and saw him go "over Sodemann's groin/genital region with his hands and giggle[.]"  (Cansler Decl. (dkt. #89-4) ¶ 19.)

While Melnick contends that the searches were proper, he offers no explanation or evidence showing that they were performed for any legitimate reason.  Viewing the evidence in the light most favorable to plaintiff, as required at this stage of the case, a jury could infer that a reasonable inmate would be uncomfortable with the level of groping by Melnick, especially if the jury credits plaintiff's and other inmates' claims that these searches followed what was a campaign sexual harassment over the course of several months and that Melnick mocked him when plaintiff expressed discomfort.  A search that is "calculated harassment unrelated to prison needs" with the "intent to humiliate and inflict psychological pain" violates the Eighth Amendment.  *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (citations and internal quotations omitted); *see also Washington v. Hively,* 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate

a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). Plaintiff points to additional evidence from other correctional officers who testified during their depositions that there is no legitimate reason for an officer to squeeze hard on a prisoner's upper thighs and groin during a pat search, and there is no certainly reason for an officer to smirk or giggle while conducting such a search. (Hanni Dep. (dkt. #66) at 8; Koceja Dep. (dkt. #89-5) at 8.) Thus, plaintiff has presented sufficient evidence from which a reasonable jury could conclude that defendant Melnick conducted two pat-down searches calculated to harass and humiliate plaintiff for malicious reasons in violation of the Eighth Amendment. *Jones*, 116 F.4th at 678; *Washington*, 695 F.3d at 643-44.

For the same reason, Melnick's qualified immunity argument fails: the material factual disputes about the nature and reasons for the pat-down searches that form the basis of plaintiff's claim remain not only to be resolved but fully explored at a trial. *See Guerrero v. O'Neil*, No. 19-cv-578-wmc, 2023 WL 3303864, at *3 (W.D. Wis. May 8, 2023) (denying qualified immunity because it was clearly established in 2019 that an officer may not conduct a pat-search in a manner intended to humiliate or harass the prisoner). Thus, and if a jury were to believe plaintiff's version of the facts, it could reasonably conclude that defendant intended to harass plaintiff by singling him out for the pat search, touching his buttocks inappropriately, and mocking him. *Id*. Accordingly, defendants' motion for summary judgment on plaintiff's Eighth Amendment pat-down search claim and Melnick's request for qualified immunity from such claim must be denied.

### C. First Amendment Retaliation

After telling Melnick that he was going to lodge a complaint about being sexually harassed, plaintiff further claims Melnick retaliated by (1) threatening to make his life a living hell, and (2) searching and trashing his cell while continuing to make derogatory comments about plaintiff's sexuality to his cellmate.  To prevail on a First Amendment retaliation claim, a plaintiff must show that:  "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).  To satisfy the second element, a plaintiff must provide evidence that he suffered a deprivation that "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

Melnick also does not deny searching plaintiff's cell while making disparaging remarks about his sexuality *immediately after* plaintiff told him that he intended to report Melnick's ongoing sexual harassment.  It is clearly established that "the First Amendment bars retaliation for protected speech."  *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Moreover, there is no question that *filing* grievances about conditions of confinement is considered protected activity for purposes of a First Amendment retaliation claim.  *See Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) ("[I]nmates have a right under the First Amendment 'to seek administrative or judicial remedies of conditions of confinement.'") (quoting *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)).

Defendants devote only one sentence to plaintiff's retaliation claim in the brief in support of their summary-judgment motion, addressing whether Melnick's actions would deter a person of ordinary firmness from complaining about a correctional officer's conduct. (Dkt. #71, at 20-21.) Defendants argue for the first time in their reply brief that *threatening* to file a grievance, as opposed to actually filing one, does not qualify as clearly established, constitutionally protected activity. (Dkt. #104, at 26-27.) The court does not address this contention because arguments that are raised or developed for the first time in a reply brief are waived. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019)); *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 968 (7th Cir. 2020). However, since Melnick may raise the defense of qualified immunity at any time, he may more fully explore this issue before the motions *in limine* deadline, trial or after trial, when the parties can more adequately brief the issue. *See Ellis v. Schunk*, No. 16-cv-390-wmc, 2018 WL 2089352, at *1-2 (W.D. Wis. May 4, 2018) (finding that a prisoner's statement that he planned to file a grievance could constitute protected speech if it was made without violating prison policy).

At this point, however, the court only addresses defendants' argument that Melnick is entitled to qualified immunity because there is no clearly established law holding an isolated threat and a cell search are sufficient deprivations to deter First Amendment activity in the future. (Dkt. #71, at 20-21.) It is well established that "[a]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Gomez*, 680 F.3d at 866 (quoting *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987)). Moreover, "[w]hether retaliatory conduct is sufficiently severe to deter is generally a

question of fact," and can only be determined as a matter of law when "the asserted injury is truly minimal." *Douglas*, 964 F.3d at 647.

While defendants downplay the effect of Melnick's actions, plaintiff presents evidence from which a jury could find that Melnick's threat to make his life a living hell was not an empty one. Specifically, if credited, there is evidence that Melnick singled out plaintiff for harassment and degrading comments on a persistent, daily basis, calling into question his sexuality in front of other inmates and exposing him to the added danger of sexual assault. Plaintiff will also testify that he knew Melnick had tormented another prisoner through destructive cell searches. (Sodemann Dep. (dkt. #65) at 53.) Moreover, the Seventh Circuit has recognized that a cell search could dissuade a person of ordinary firmness from exercising First Amendment activity. *Morris v. Scott*, 840 F. App'x 14, 15-16 (7th Cir. 2021); *see also Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (a deprivation in the form of a cell shakedown could deter future First Amendment activity, but concluding that the plaintiff failed to establish that his grievances were a motivating factor for the shakedown). Threats of adverse action by a correctional officer have also been found capable of deterring a person of ordinary firmness from engaging in activity protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Therefore, a reasonable jury could conclude that Melnick's threat and cell search while making disparaging comments about plaintiff's sexuality to his cellmate -- both of which plaintiff will testify followed immediately after he raised the possibility of seeking the help of other sergeants *and* considered in the contexts of Melnick's reported, larger pattern of abusive behavior towards plaintiff -- constituted a deprivation that would likely

21

deter First Amendment activity.  *See Bridges*, 557 F.3d at 552 (harassment in combination with other adverse actions is sufficient to deter a person of ordinary firmness).  Regardless, because plaintiff has again demonstrated material, factual disputes about whether Melnick violated his clearly established right to be free from retaliation, defendants' motion for summary judgment on plaintiff's retaliation claim must be denied.

### D. Fourteenth Amendment Equal Protection

Finally, plaintiff contends that Melnick targeted him for sexual harassment in violation of the Fourteenth Amendment Equal Protection Clause, and the court granted him leave to proceed under a so-called "class of one" theory.  (Dkt. #18, at 5.)  In the prison context, the Equal Protection Clause "requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000) (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984), and *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988)).  In particular, the Equal Protection Clause guards against government discrimination on the basis of race and other immutable characteristics, but it also protects people from discrimination by a government actor who arbitrarily and irrationally singles out one person for poor treatment for no rational reason.  *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016).  Thus, class-of-one claims are designed to prevent government actors from singling out a person for arbitrary abuse.  *Id*. (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  This type of discrimination typically occurs when "a public official 'with no conceivable basis for his action, other than spite or some other improper motive . . . comes down hard

on a hapless private citizen.'" *Id*. (quoting *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013)).

As already explained, plaintiff has presented evidence that defendant Melnick sexually harassed him on a daily basis for more than a year and singled him out for mistreatment based on his perceived sexual orientation. Plaintiff further presents evidence that the sexual harassment he experienced was severe, pervasive, and exposed him to threats of assault. Moreover, it is clearly established that the Equal Protection Clause protects against "sexual harassment by a state actor under color of state law." *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) (citing *Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015)). Thus, plaintiff has presented evidence from which a reasonable jury could conclude that Melnick violated his right to equal protection by singling him out for mistreatment without a rational basis.

Nevertheless, defendants argue that plaintiff's equal protection claim is more appropriately addressed under the First and Eighth Amendments. In support, they cite *Perez v. Frank*, No. 04-C-1062, 2008 WL 859716, at *13 (E.D. Wis. March 28, 2008), which held "[t]he Equal Protection Clause is not applicable where a more specific right is at issue," as well as *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005), in which the Seventh Circuit declined to consider an inmate's claim that he was not allowed to participate in Ramadan in violation of the Equal Protection Clause because that claim was more appropriately addressed under the Free Exercise Clause of the First Amendment. However, both cases are distinguishable. Neither one involves extreme verbal abuse of the sort actionable under the Eighth Amendment and class-of-one discriminatory treatment

under the Equal Protection Clause. *E.g., Tay v. Dennison*, 457 F. Supp. 3d 657, 681-86 (S.D. Ill. 2020) (finding that a prisoner demonstrated a likelihood of success on the merits of claims under both the Eighth Amendment and Equal Protection Clause based on frequent and ongoing sexual abuse and harassment). While defendant's alleged conduct may well violate the First Amendment as well, the court is unable to find this precludes plaintiff from proceeding on other credible constitutional theories that are, unlike in *Perez* and *Conyers*, equally or arguably even better suited to the fact pattern alleged.

Similarly, defendants cite *Graham v. Conner*, 490 U.S. 386 (1989), for the proposition that courts must identify the specific right the plaintiff has alleged and analyze it accordingly. However, the issue in *Graham* concerned whether a "generalized notion of 'substantive due process' [under the Fourteenth Amendment]" could apply to a plaintiff's claim that excessive force was used during his arrest, rather than the "explicit textual source of constitutional protection" afforded by the Fourth Amendment. *Id*. at 395. As both the Supreme Court and the Seventh Circuit have observed, *Graham* "does not hold that all constitutional claims relating to physically abusive government conduct must arise under *either* the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Hess v. Garcia*, 72 F.4th 753, 764-65 (7th Cir. 2023) (emphasis added) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 833 (1998); *Lanier v. United States*, 520 U.S. 259, 272 n. 7 (1997)). Rather, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands."

24

*Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 70 71 (1992).  Regardless, because plaintiff does not raise a substantive due process claim in this case, defendants fail to establish that *Graham* forecloses his claim under the Equal Protection Clause.

Defendants also contend that plaintiff cannot prevail on a claim under the Fourteenth Amendment because the Equal Protection Clause does not apply to discretionary decisions in the prison context.  (Dkt. #71, at 17.)  However, a correctional officer's deliberate, persistent and inappropriate pattern of sexual harassment of an inmate cannot be reduced to a discretionary decision, nor do defendants cite to any case law in support of that proposition.  In the end, because there are material fact disputes with regard to all of these actions by defendant Melnick, defendants' motion for summary judgment on plaintiff's Fourteenth Amendment claim must be denied, along with their perfunctory request for qualified immunity from such a claim.

## II. Claims Against Miller and Pollesch

Plaintiff was granted leave to proceed with a claim against defendants Miller and Pollesch as well, for knowing about Melnick's sexual harassment but failing to intervene. It is well established that a prison official may be held liable for a constitutional violation perpetrated by another if the official knows about the violation and has a realistic opportunity to intervene yet fails to act.  *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004); *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) ("[A] prison official's knowledge of prison conditions learned from an inmate's communication can . . . require the officer to exercise his authority and to take the needed action to investigate, and if necessary, to

rectify the offending condition.") (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

As outlined above, plaintiff has presented evidence from which a reasonable jury could conclude that defendant Melnick openly subjected him to sexual harassment on a near daily basis for over the course of a year or more in violation of the Eighth Amendment. Plaintiff has also presented evidence that he told defendant Miller, who was a DOC Sergeant and PREA investigator at the time about the homosexual comments Melnick made about him *and* the sexual comments Melnick made about plaintiff's mother and sister, but Miller did nothing.  (Dkt. #90-1, at 118.)   In addition, plaintiff provides declarations from two other inmates, who aver defendant Pollesch was told that Melnick was sexually harassing people (Habram Decl. (dkt. #89-3) ¶ 24), *and* that she was also physically present to "hear what [Melnick] was saying and see what he was doing," but did nothing to stop him.  (Potts Decl. (dkt. #89-7) ¶ 14.)

Although defendants argue that plaintiff's inmate witnesses are not credible for various reasons, "[i]t is axiomatic that district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, 'both of which are the province of the jury.'" *Whitaker v. Dempsey*, 144 F.4th 908, 917 (7th Cir. 2025) (quoting *Omnicare, Inc. v. UnitedHealth Group, Inc*., 629 F.3d 697, 704-05 (7th Cir. 2011)).  While a closer question than his claims against Melnick, plaintiff's evidence is still sufficient to create material issues of fact that a jury must address as to whether defendants Miller and Pollesch knew that Melnick was sexually harassing inmates but failed to intervene in violation of plaintiff's rights and because those rights were also clearly

established at the time of the alleged violation, these factual disputes similarly preclude finding that either Miller or Pollesch are entitled to qualified immunity. *See Locke*, 788 F.3d at 667-68 (affirming denial of qualified immunity for supervisor of parole agent who failed to respond to complaints by plaintiff parolee that agent was sexually harassing him); *Fillmore*, 358 F.3d at 505-06 (same).

## III. Plaintiff's Claim for Compensatory Damages

Defendants further argue that plaintiff's claim for compensatory damages must be dismissed as barred by the Prison Litigation Reform Act ("PLRA"). (Dkt. #71, at 23-24.) Specifically, the PLRA limits recovery of compensatory damages for "mental or emotional injury" in civil actions filed by prisoners concerning conditions of confinement "without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)." 42 U.S.C. § 1997e(e). "To satisfy § 1997e(e), prisoners must show an injury that is more than negligible although not necessarily significant." *Hacker v. Dart*, 62 F.4th 1073, 1079 (7th Cir. 2023); *Wilson v. United States*, 332 F.R.D. 505, 520 (S.D.W. Va. 2019) ("courts have held that the 'physical injury' referenced by the Act need not be significant, but must be more than *de minimis*")(citations omitted). Absent proof of a physical injury or sexual act *as defined by* 18 U.S.C. § 2246, which would appear to be

absent in this case[3] defendants point out that any potential recovery of compensatory damages is limited by the PLRA.

To begin, although § 1997e(e) bars recovery of compensatory damages for mental and emotional anguish alone, the statute is inapplicable to awards of nominal or punitive damages for Eighth Amendment violations involving no physical injury. *Calhoun*, 319 F.3d at 941. This means a trial over Melnick's alleged "sexual acts" must go forward. Moreover, plaintiff correctly notes that § 1997e(e) does not apply to First Amendment claims. *See Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) (holding that a "deprivation of First Amendment rights standing alone is a cognizable injury"). Since plaintiff has presented some evidence that prolonged, persistent sexual harassment by defendant Melnick caused extreme anxiety, panic attacks, and insomnia on a sustained basis, for which plaintiff sought medical attention (PPPFOF ¶¶ 43, 47-51), compensatory damages may still be available. For example, courts have held that prisoners who allege sleep deprivation have plausibly stated a more than *de minimis* injury to satisfy § 1997e(e). *Love v. Godinez*, No. 15 C 11549, 2018 WL 2096375, at *4 (N.D. Ill. May 7, 2018); *Gurley v. Sheahan*, Case No. 06 C 3454, 2009 WL 2178685, at *7 (N.D. Ill. July 21, 2009) ("[T]he court can think of no reason why sleep deprivation and headaches would not constitute physical injury.").

When viewed in the light most favorable to plaintiff, therefore, the evidence is sufficient to raise a triable fact issue for the jury to decide regarding the availability of

---

[3] Section 2246 of Title 18 defines "sexual act" generally as: contact between genitals; contact between the mouth and genitals; penetration of anal or genital openings with any object "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or the intentional touching, not through the clothing," of another person's genitals with the same intent requirement. 18 U.S.C. § 2246(2)(A)-(D).

compensatory damages for plaintiff's Eighth and Fourteenth Amendment claims.  *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("Gray's summary judgment materials, we conclude, present triable issues of fact for a jury, which must determine the degree of both physical and psychological harm he suffered as a result of the [conditions of his confinement]. If the jury finds that Gray suffered only psychological harm, he will be limited to nominal and punitive damages.").  Accordingly, the defendants' motion for summary judgment on plaintiff's claim for compensatory damages will be denied, at this time, although it may be raised again at the close of plaintiff's case.

## IV.  Defendants' Affirmative Defenses

Finally, plaintiff has moved for summary judgment on defendants' affirmative defenses of mitigation and contributory negligence.  (Dkt. #67.)  First, plaintiff argues that the duty to mitigate does not apply if he is only seeking non-economic, damages for intangible losses, such as pain and suffering.  (Dkt. #68, at 4.)  The Seventh Circuit has held that mitigation "is not required for intangible losses."  *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 264 (7th Cir. 1996).  Second, plaintiff points out that the defense of contributory negligence does not apply to § 1983 claims, which require proof of intentional -- not negligent -- conduct.  *Santiago v. Lane*, 894 F.2d 218, 244 (7th Cir. 1990); *see also Gidarisingh v. Pollard*, 571 Fed. Appx. 467, 471 (7th. Cir. 2011) (finding that contributory negligence did not apply to an Eighth Amendment failure-to-protect claim); *Hartsell v. Dietz*, No. 20-cv-588, 2023 WL 6382578, at *10 (N.D. Ind. Sept. 30, 2023) ("courts have explicitly held that the showing of intentional or reckless conduct required in § 1983 claims precludes a defense of contributory negligence").

While defendants argue that plaintiff's motion should be denied because the affirmative defenses of mitigation and contributory negligence apply to plaintiff's state law claims (dkt. #82), as already noted, plaintiff has withdrawn all of his state law claims (dkt. #84), and he is not alleging that he suffered economic losses, like medical expenses or lost wages. *See Carter v. United States*, 333 F.3d 791, 793 (7th Cir. 1993) (comparing economic damages and non-economic damages). Because defendants have offered no legal support showing that the affirmative defenses of mitigation and contributory negligence apply to plaintiff's federal claims, all of which involve allegations of intentional misconduct, plaintiff's motion for partial summary judgment will be granted as to these affirmative defenses.

## ORDER

IT IS ORDERED that:

1) The motion for partial summary judgment filed by plaintiff Jason Sodemann (dkt. #67) is GRANTED.

2) The motion for summary judgment filed by defendants Joshua Melnick, Dana Miller, and Melissa Pollesch (dkt. #70) is DENIED.

3) The clerk's office will set this case for a scheduling conference before Magistrate Judge Anita Boor for purposes of establishing dates for a pretrial conference and trial.

Entered this 19th day of September, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge