**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

JASON SODEMANN,

       Plaintiff,

                                       Case No. 3:22-cv-00374-wmc

vs.

JOSHUA MELNICK, DANA MILLER, AND
MELISSA POLLESCH,

       Defendants.

---

**PLAINTIFF'S MOTIONS *IN LIMINE***

---

Under the Court's Jury Trial Procedures for Pretrial Submissions and its November 13, 2025 order, ECF No. 112, plaintiff Jason Sodemann submits the following motions *in limine*.

## BACKGROUND

This is a civil rights case arising from Defendants' violation of Plaintiff's constitutional rights while he was a prisoner at Fox Lake Correctional Institution. At trial, Plaintiff will present evidence that, for more than a year, from early 2021 until late-May 2022, Defendant Joshua Melnick, a correctional sergeant assigned to his housing unit, regularly subjected him to extreme sexual harassment, publicly calling him sexually derogatory names and intentionally misidentifying him as homosexual to other inmates. Plaintiff will also show that Melnick regularly made harassing physical gestures, including flashing a hand signal suggesting Plaintiff is gay and grabbing his own groin while telling Sodemann to "suck it." In addition, Plaintiff will show that at least two times, Melnick groped Plaintiff's genitals while purporting to conduct pat down searches, and Melnick laughed when Plaintiff protested the abuse. Plaintiff will testify that

Melnick's harassment and abuse led to a mental health breakdown, causing him extreme anxiety, panic attacks, sleeplessness, and constant fear.

Plaintiff will also show at trial that Defendants Melissa Pollesch and Dana Miller, correctional sergeants who worked alongside Melnick, knew about the harassment but did nothing to stop the abuse despite their training, prison policies, and federal laws mandating zero tolerance for sexual harassment and abuse of prisoners by prison staff.

Nine prisoners or former prisoners, including Plaintiff, gave testimony during discovery about what they saw Defendants do and heard them say at Fox Lake in 2021 and 2022. Plaintiff plans to present testimony from those witnesses who saw and heard Melnick's harassing and assaultive behavior, and those who spoke to Pollesch and Miller or saw Pollesch and Miller observe Melnick's misconduct. To streamline trial, Plaintiff requests the Court exclude *in limine* the evidence described below and enter the below-described orders about trial logistics.

## **LEGAL STANDARD**

Motions *in limine* are "an important tool" for "expeditious and evenhanded management" of trials. *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Deciding contested issues before trial "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.* This "sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Id.* The Court has "broad discretion" when ruling on evidentiary issues presented in motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

**ARGUMENT**

## I. Motion *in Limine* No. 1: To Exclude Evidence of Defendants' Good Character

Defense counsel spent significant time during depositions soliciting inadmissible character evidence about Defendants. The Court should enter an order prohibiting Defendants from introducing such evidence at trial under Federal Rules of Evidence 401, 402, and 404.

Defendants sought to develop evidence during depositions that the prisoners who witnessed their misconduct regarded them as well-meaning people. For example, at Plaintiff's deposition, defense counsel asked if Plaintiff trusts Defendant Miller, ECF No. 65, Sodemann Dep. 29:19; solicited testimony about whether and why Plaintiff believes Miller is "a good person," *id.* at 29:10–30:8; and asked whether Miller is "fair," *id.* at 30:16. Similarly, counsel asked Plaintiff if Defendant Pollesch is "fair" and trustworthy, *id*. at 44:12, 44:24; and counsel solicited testimony that Plaintiff thinks Pollesch is a "nice person" and a mother, *id*. at 44:1–11.

Defense counsel asked similar questions to the seven prisoner witnesses she deposed in February 2026. James Cansler was imprisoned with Plaintiff at Fox Lake in 2021 and 2022, and Cansler heard Melnick's near-daily verbal harassment and saw Melnick physically assault Sodemann during a pat down search. At Cansler's deposition, defense counsel asked Cansler if he thought Defendant Miller was fair, "would write petty conduct reports", was "by the book," and was trustworthy. Cansler Dep. 35:25, 36:4, 36:17, 37:1, attached as **Exhibit 1**. Likewise, about Melnick, counsel asked Cansler: "Did you think he was funny?" *id* at 42:1; "Did it seem like at the time other inmates thought he was funny?" *id*. at 42:10–11; "Did you think Melnick was smart?" *id.* at 43:13; "Did you think he was kind?" *id.* at 43:17; "Did you think Sergeant Melnick was intimidating?" *id.* at 44:24-25; "did you think of him as laid back?" *id*. at 45:4; "Did you think of him as fair" *id.* at 45:6; "Did he seem playful?" *id.* at 45:11; "Did he seem like

he was trying to be your friend?" *id* at 45:13–14; "did Sergeant Melnick seem honest?" *id.* at
46:4; "Do you ever recall a time where Sergeant Melnick said something to you and then you
found out later that that wasn't true or not accurate?" *id*. at 48:13–17.

Melnick admits he made many of the comments Plaintiff attributes to him, and he has
defended the case by characterizing his behavior as joking, friendly, and innocently intended.
*See, e.g.,* ECF No. 76 ¶¶ 25–27 ("I understand that this case is about inappropriate comments I
made over my time working on Unit 5. At times, I jokingly called a handful of inmates,
including Jason Sodemann, 'gay,' 'fag,' or 'queer.' I intended these comments as a joke because
it seemed like my rapport with the inmates was joking in nature."). Defendants appear poised to
bolster this defense by presenting trial evidence that Melnick was an approachable, funny, kind,
friendly, laid-back person. They also appear poised to argue that nice, trustworthy, by-the-books
people like Pollesch and Miller wouldn't fail to report misconduct if they'd known about it.

The rules of evidence prohibit that use of character evidence: "Evidence of a person's
character or character trait is not admissible to prove that on a particular occasion the person
acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). What's more, the
evidence is irrelevant: whether Melnick was, for example, funny or smart or interested in
befriending prisoners, sheds no light on whether he engaged in a campaign of sexual harassment
against Jason Sodemann. Fed. R. Evid. 401, 402 (excluding irrelevant evidence from trial).
While Melnick's intent in calling Plaintiff "fag," "dyke," "bitch," "butt buddy," and other
derisive terms is technically relevant to liability, *see, e.g., Washington v. Hively*, 695 F.3d 641,
643 (7th Cir. 2012) (conduct satisfies Eighth Amendment subjective, state-of-mind requirement
if "intended to humiliate the victim or gratify the assailant's sexual desires"), Melnick's general
character and likeability is irrelevant or, at most, of so little relevance that its introduction risks

4

confusing the issues before the jury. Fed. R. Evid. 403. The Court already has recognized that Melnick's "just joking" defense has limited worth: "Melnick, who admits that he repeatedly made derogatory remarks towards plaintiff regarding his sexuality, argues that since he was just joking, his conduct was, at worst, merely 'unprofessional.' He is simply wrong legally, as well as morally." ECF No. 110 at 10.

The Court should therefore enter an order barring character evidence about Melnick of the type identified above. The Court should also exclude from trial good character evidence offered to show that, because they're nice people, Miller and Pollesch must not have failed to intervene after learning of Melnick's harassing activities.

## II.   Motion *in Limine* No. 2: To Exclude Evidence of Profanity in the Prison

Defendants should be prohibited under Federal Rules of Evidence 402 and 403 from arguing that Plaintiff's rights weren't violated or that he wasn't harmed by Melnick's harassment because prisoners at Fox Lake often used profane words, used the word "gay," and falsely accused each other of being gay. Defense counsel questioned the prisoner witnesses about whether and to what extent prisoners at Fox Lake use profane or obscene language and/or call each other "gay." For example, counsel asked Plaintiff: "Did you ever hear other inmates make homosexual comments to each other?" ECF No. 65, Sodemann Dep. 53:8-9. Likewise, she asked Cansler: "Do you use swear words when you speak with other inmates?" and "Do you hear other inmates use curse words when speaking with each other?" Ex. 1, Cansler Dep. 100:2–13. Counsel later asked Cansler if he's "heard people at Fox Lake say the word gay?" *Id.* at 104:20-21. Defense counsel asked similar questions of the other prisoner witnesses she deposed.

Prisoners' use of the word "gay" and their use of profanity have no relevance to any fact at issue in this case. The prevalence of profanity and the discussion of homosexuality at the

5

prison does not make it any more or less likely that Melnick sexually harassed and groped Plaintiff or that Miller and Pollesch knew of Melnick's misconduct and failed to act. Fed. R. Evid. 401 (defining relevant evidence). Nor does the fact that prisoners may have called each other "gay" as an insult make it any less likely that Plaintiff experienced extreme emotional distress because of Melnick's abuse. The Court should exclude such evidence and argument as irrelevant. Fed. R. Evid. 402.

Evidence of prisoners' language use is also misleading and confusing because it creates a false equivalence between prisoners and correctional sergeants. Fed. R. Evid. 403. Even assuming Plaintiff were accustomed to crass language from other prisoners and thereby desensitized to it, it does not follow that Plaintiff would feel the same way about a correctional sergeant—who's in a position of power and responsible for Plaintiff's care and protection— calling him "fag" in front of other prisoners. James Cansler made this point at his deposition when defense counsel asked whether Cansler "ever hear[d] other inmates make homosexual comments to each other," explaining: "It's one thing, again, if it happens within our peer group, and I'm not saying it's okay or acceptable, but it's just a whole different category when you have someone in a position of authority engaged in these behaviors and we're in—I'm a person in their care. That's—that's not—it's—that's not appropriate." Ex. 1, Cansler Dep. 53:8–24.

The Court should enter an order barring Defendants from introducing at trial any argument or evidence that prisoners at Fox Lake used profanity or crass language, falsely accused each other of being gay, or used the words "gay," "fag," "queer" or the like.

### III. Motion *in Limine* No. 3: To Exclude Third-Party Impressions of and Speculation About Melnick's Motives

To bolster their "just kidding" defense, Defendants will likely ask third-party witnesses whether those witnesses thought Melnick was joking when he abused Sodemann. For example,

defense counsel asked Cansler at his deposition:

- "Was it your impression that Sergeant Melnick was trying to be friend with other inmates on the unit?" Ex. 1, Cansler Dep. 45:20–22.

- "Is it fair to say at times he was joking, making homosexual comments, and at other times he was threatening to write conduct reports or send people to the hole?" *Id.* at 51:4.

Defense counsel asked the same questions of several other prisoner deponents. It is reasonable to assume they will attempt this at trial too.

This evidence is inadmissible for two independent reasons. First, it is inadmissible because it is lay opinion testimony that is not helpful to the jury. Fed. R. Evid. 701; *United States v. Guzzino*, 810 F.2d 687, 699 (7th Cir. 1987). The Seventh Circuit has long treated testimony like this—where a witness who observes a party do something testifies about the witness's impression of the party's state of mind—as "lay opinion testimony as to the mental state of another," which is neither presumptively admissible nor inadmissible. *Id*. But to be admitted, it must meet Rule 701's requirements. *Id*. This means such evidence must be "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(a) & (b).

*Guzzino* illustrates how testimony about prisoners' impressions of Melnick's motivations fails to meet the "helpfulness" requirement. *Guzzino* affirmed a district court's decision to sustain the government's objection to a defense question to a third-party witness about whether the defendant had a reason to kill the victim. 810 F.2d at 699. The answer would not have helped the jury because it "would not have revealed the facts" the witness used to reach the conclusion; and because the witness's opinion on the point just was not that important, it "could mean very little." *Id*.

So too here. The witnesses' opinion testimony—as opposed to their observations of objective facts like tone, words, expressions, and so on—isn't very helpful because it won't come with the facts the jury would need to evaluate it. For example, these opinions are no doubt based on the witness observing some, but not all, of the harassment. They may be influenced by other, irrelevant interactions with other prisoners or guards. Or they may be influenced by the witness's own upbringing, values, attitudes, or sensitivities. For these reasons, this is not a situation where lay opinion testimony about Melnick's mental state is helpful. And for that reason, the evidence is inadmissible.

It is also inadmissible under Rule 403. For the same reasons that the opinions are unhelpful, they have little probative value. Does the witness think Melnick was joking (or not joking) because of facts relevant to that inquiry or because the witness has idiosyncratic values or limited knowledge of Melnick and Sodemann? The jury won't know. And attempting to lay the necessary foundation is the definition of juice not worth the squeeze under Rule 403's waste-of-time standard.

Excluding this evidence prejudices Defendants not at all. They can still ask Melnick if he was joking. And they can elicit from any witness any supportive fact: Did Melnick chuckle? Did he sound angry? Did everyone laugh? Did Sodemann smile? These objective facts—if proven— might support their argument. This motion does not seek to exclude those.

## IV. Motion *in Limine* No. 4: To Exclude Witnesses' Opinions About Third Party Conduct And Opinions

Along similar lines, Defendants will likely ask third party witnesses if they've ever joked around about something being "gay." Again, defense counsel did this with Cansler and other witnesses, asking:

- "Have you ever called something gay that you thought was annoying or stupid or dumb?" *Id.* at 107:12–13.

- "Do you see gay as an insult?" *Id*. at 111:10–14.

This testimony is inadmissible because it is irrelevant. Fed. R. Evid. 401, 402. For liability, what matters is whether what Melnick did was objectively serious enough to violate the Eighth Amendment and whether his mental state was sufficiently culpable to violate the Eighth Amendment. *Walton v. Nehls*, 135 F.4th 1070, 1072 (7th Cir.), *cert. denied*, 146 S. Ct. 295 (2025). For damages, what matters is how Melnick's actions impacted Sodemann. Third parties' usage of slurs and their opinions of them do not bear on those issues. That evidence should therefore be excluded. Moreover, even if it were marginally relevant, if defense counsel focuses on this testimony as aggressively at trial as they did during depositions, admission of the evidence risks consuming the trial and wasting the jury's time. Fed. R. Evid. 403.

## V.   Motion *in Limine* No. 5: To Exclude Evidence of Prisoners' Disciplinary History

The Court should exclude evidence of Plaintiff's and other witnesses' prison disciplinary history. Plaintiff has been in prison since 2013. During Plaintiff's deposition, defense counsel questioned him about time he spent in segregation for disciplinary infractions—soliciting a staff member and drug use—that did not involve any defendant or witness to this lawsuit. ECF No. 65, Sodemann Dep. 80:22–81:114; *id*. at 165:7–166:22. Defendant Pollesch also testified about Plaintiff's time in segregation arising from a "fail[ed] random urine analysis test"; and she alluded generally to "reminding him of the rule infractions he was breaking." ECF No. 97, Pollesch Dep. 18:22–24; *id.* at 63:10–14. In addition, Defendants have produced documents that discuss Plaintiff's unrelated disciplinary infractions, including offenses of which he was later determined to have been falsely accused. *See, e.g.,* email attached as **Exhibit 2**. To the extent

Defendants wish to introduce evidence of Plaintiff's prison disciplinary infractions, they should be barred from doing so as the evidence is irrelevant and prejudicial.

The issue for the jury is whether Melnick sexually harassed, groped, and retaliated against Plaintiff, and whether Miller and Pollesch knew what Melnick was doing but failed to intervene to help Plaintiff. The main events in the case occurred between January 2021 and June 2022. Defendants have developed no evidence that Plaintiff received any relevant discipline in this timeframe. As such, there is no basis for admitting any evidence of Plaintiff's disciplinary history from his time in the Wisconsin Department of Corrections. Fed. R. Evid. 401 (defining relevant evidence); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

And even if Sodemann's disciplinary history were relevant for some reason, the probative value of that evidence would be outweighed by the risk of unfair prejudice, as is frequently the case in prisoner civil rights lawsuits. *See, e.g., Turner v. Rataczak*, No. 13-cv-48-jdp, 2014 WL 5023095, at *11 (W.D. Wis. Oct. 8, 2014) (granting, over objection, plaintiff's motion to exclude his entire prison disciplinary record from trial, finding relevance of past misconduct is "negligible to any non-propensity purpose, and its marginal relevance is substantially outweighed by the risk of the jury using it as character evidence"); *Lacy v. McArdle*, No. 20-cv-1014-dlp, 2023 WL 4581759, at *6 (W.D. Wis. July 18, 2023) (granting motion *in limine* and ordering: "Defendants may not offer evidence about Lacy's disciplinary history."); *LaBrec v. Syed*, No. 19-cv-804-jdp, 2023 WL 1505603 at *6-7 (W.D. Wis. Feb. 3, 2023) (requiring defendants to "identify a good-faith basis" for questioning prisoner plaintiff about conduct reports at trial); *Ajala v. Swiekatowski*, No. 13-cv-638-bbc, 2015 WL 5009802, at *5-6 (W.D. Wis. Aug. 19, 2015) (granting same motion in limine "because defendant identifies no reason that plaintiff's disciplinary history would be relevant to any issue related to liability"). This is

particularly true for infractions of which he was later cleared. *See, e.g.,* Ex. 2.

Defendants have developed no evidence during discovery that third-party witnesses committed disciplinary infractions connected in any way to the allegations of this case. The prisoner witnesses' disciplinary history is thus irrelevant and unduly prejudicial in the same way as Plaintiff's history. Fed. R. Evid. 402, 403.

Plaintiff respectfully requests the Court enter an order barring from trial any argument, questions, testimony, and evidence mentioning Plaintiff's or any witness's prison disciplinary history.

## VI.  Motion *in Limine* No. 6: To Exclude Criminal History Evidence

Since 2013, Plaintiff has been serving a 14-year sentence for three felony convictions of burglary and one conviction of robbery. Before the crimes that gave rise to his current period of imprisonment, Plaintiff was convicted of other crimes, including sexual assault arising from his relationship with a 15-year-old girl while he was 20 years old. Though he was not sentenced to a term of imprisonment for that crime, he was punished with a lifetime requirement to register as a sex offender. Defense counsel questioned Plaintiff about his criminal history at his deposition, including his status as "sex offender." *See, e.g.,* ECF No. 65, Sodemann Dep. 22:21–24:17 (asking about crimes of conviction, time spent in jail and other prisons); *id.* at 119:4–8 (asking about Plaintiff's status as a "sex offender"). Documents produced during discovery in this case also discuss Plaintiff's criminal history, and some documents provide details (including details Plaintiff disputes) about past crimes. These materials include information related to Plaintiff's classification, a topic counsel discussed with Plaintiff at length during his deposition. *See, e.g., id*. at 108:2–111:16.

Defendants should be barred from introducing evidence of Sodemann's crimes of

conviction, the fact that he is a registered sex offender, the length of his sentence, and classification matters, other than to say that Sodemann has been convicted of multiple felonies. Evidence of the crimes of which Plaintiff was convicted does not make any fact the jury must decide more or less probable. Fed. R. Evid. 401 (defining relevant evidence); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). What's more, the Seventh Circuit has repeatedly expressed concern regarding unfair prejudice that might result from evidence of past convictions in civil rights cases. *See, e.g.*, *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990). Where there is a danger that evidence of the nature of a past conviction will cause unfair prejudice, the Seventh Circuit has approved of "sanitization" of prior convictions—permitting evidence that the witness was convicted of a felony but concealing the name of the crime. *See, e.g., Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009); *Pierce v. Ruiz*, No. 13-CV-6824, 2016 WL 5912890, at *3 (N.D. Ill. Oct. 11, 2016); *Matthews v. Debus*, No. 14-CV-6003, 2020 WL 891035, at *3 (N.D. Ill. Feb. 22, 2020) ("[F]or purposes of impeaching [plaintiff's] credibility, defendants may offer only the dates of the convictions and the fact that each of them is for a felony; they may not offer the sentences or the titles of the crimes.").

Under Rules 402 and 403, the Court should enter an order prohibiting Defendants from mentioning Plaintiff's criminal history—including evidence related to his classification hearings and status—other than to say he has been convicted of multiple felonies, as this Court has done under similar circumstances in other cases. *Coder v. Giese*, No. 21-CV-109-WMC, 2025 WL 1057053, at *2 (W.D. Wis. Apr. 7, 2025) ("As is this court's general practice, therefore, defendant may ask plaintiff whether he has been convicted of 5 felonies. Additional details regarding the nature of those offenses would have little probative value and likely be unfairly prejudicial. Accordingly, that information will only be allowed to impeach in the unlikely event

that plaintiff were to deny the correct number of his felony convictions."); *Turner*, 2014 WL 5023095, at *9-10 ("This court generally has not allowed the length of sentence to be discussed in cross-examination. . . . [S]o I will exclude that information. In addition, the sheer number of felonies is likely to unfairly prejudice plaintiff. The idea behind Rule 609 (that felons are less credible than non-felons) can be served without resorting to disclosing the total number of felonies, which would likely incline the jury to decide the case on the basis of plaintiff's character, rather than his credibility."); *Lacy*, 2023 WL 4581759, at *6–*7.

The Court should follow the same procedure for any witness who testifies at trial other than Plaintiff. Plaintiff anticipates calling James Cansler, Spencer Potts, Stephane Kingue, Richard Garcia, Colin Habram, and possibly Casey Thundercloud and Michael Becker at trial. Each of those men was or is a prisoner of the State of Wisconsin who lived in Unit 5 at Fox Lake at the same time as Plaintiff and saw or heard Melnick sexually harassing Plaintiff. Cansler and Garcia also saw Melnick grope Plaintiff. And Habram has firsthand knowledge that Pollesch was aware of Melnick's misconduct while it was occurring. Each of those witnesses has been convicted of a felony. Defendants developed no evidence during discovery that any of those witnesses was convicted of a crime in the past 10 years that would qualify for use as impeachment evidence under Federal Rule of Evidence 609. As such, for the same reasons evidence of Plaintiff's criminal history should be excluded from trial, the Court should exclude evidence of the third-party witnesses' criminal history, except to say they've been convicted of felonies.

VII.        **Motion *in Limine* No. 7: To Exclude Evidence of Plaintiff's Drug Use**

Defendants should be barred under Federal Rules of Evidence 402, 403, 404, and 802 from introducing evidence that Plaintiff used drugs before his imprisonment or while in prison.

Documents Defendants produced during discovery, including, for example, the transcript from Plaintiff's 2013 sentencing hearing, discuss Plaintiff's struggle with drug addiction and the role drug use played in the burglaries and robbery that resulted in Plaintiff's current term of imprisonment. Plaintiff has continued to struggle with drug addiction during his imprisonment. The paper record contains references to a disciplinary infraction he received for using drugs in prison, as well as a conversation about drug use between Plaintiff and a mental healthcare provider at the prison during a medical appointment. In addition, Defendants produced emails in which Defendant Miller and other correctional officers baselessly (and falsely) speculate that Plaintiff trafficked drugs at Fox Lake. *See* emails, attached as **Group Exhibit 3**. Plaintiff's drug use came up at depositions as well. As discussed above, Pollesch testified at her deposition about a positive urinalysis Plaintiff had at Fox Lake. ECF No. 97, Pollesch Dep. 18:22–24. And counsel questioned Plaintiff about drug use during his deposition. ECF No. 65, Sodemann Dep. 115:22-116:12 (asking whether Plaintiff has drug treatment needs); *id*. at 166:25–167:14 (eliciting testimony about segregation sentences for failed drug tests in 2018 and earlier).

Plaintiff's history of drug use is irrelevant, prejudicial, and improper character evidence, and the documentary evidence related to his drug use is hearsay. That Plaintiff used drugs before his imprisonment and while in prison, years before Melnick began harassing him, does not shed light on any issue the jury must decide. Fed. R. Evid. 401, 402. Defendants have adduced no evidence that drug use in any way influenced or impacted any events at issue in this case. Given its irrelevance, evidence of Plaintiff's drug use could only serve to impugn his character, which is not a permissible use of such evidence. Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). What's more, notes in the medical

records about what treaters say Plaintiff told them about his drug use are inadmissible hearsay.

Fed. R. Evid. 801 (non-party witness's written assertion offered for its truth is hearsay); Fed. R.

Evid. 802 (hearsay is inadmissible).

And even if Plaintiff's drug use had scant relevance and weren't improper character

evidence or hearsay, the risk of prejudicing the jury against Plaintiff by admitting such evidence

greatly outweighs the probative value of evidence that Plaintiff has used drugs. Fed. R. Evid. 403

(authorizing exclusion of relevant, prejudicial evidence); *see, e.g., Thomas v. Sheahan*, 514 F.

Supp. 2d 1083, 1088 (N.D. Ill. 2007) (granting motion to exclude evidence of prisoner plaintiff's

drug use in jail denial of medical care case finding drug use was irrelevant to the constitutional

claim and "would likely prejudice the jury").

For all those reasons, the Court should enter an order excluding from trial any evidence

or argument related to Plaintiff's use of drugs at any time.

### VIII. Motion *in Limine* No. 8: To Exclude Evidence of Plaintiff's Unrelated Complaints

Defense counsel questioned Plaintiff during his deposition about a previous complaint he

made under the Prison Rape Elimination Act and other complaints he made verbally and in

writing during his time in prison. ECF No. 65, Sodemann Dep. 128:20-132:3 (questioning about

earlier PREA report); *id.* at 152:24-153:10 (Plaintiff testifying about a complaint he made about

a lost magazine); *id.* at 157:10–12 (questioning Plaintiff about other inmate complaints).

Defendant Miller also testified that Plaintiff was a frequent complainer. ECF No. 98, Miller Dep.

105:5–106:3 ("Well, in my time knowing him and—and as a—as a sergeant on the unit, like

dealing with him on a daily basis, I mean, he was known to—you know, he would—he would

complain about stuff."); *id.* at 106:11–17 ("it wasn't uncommon for him to come in and ask

about stuff or complain about something"). Defendants may wish to argue at trial that Plaintiff

has engaged in a pattern of complaining about conditions in prison as a fraudulent mechanism to manipulate or retaliate against prison staff. Because that argument runs afoul of Federal Rules of Evidence 402, 403, and 404, the Court should exclude such evidence from trial.

The argument that Plaintiff is a frequent complainer is most readily excludible under Rule 404(b)(1)'s bar against using "evidence of any other . . . act" for propensity purposes. The evidence is also excludable under Rule 403, which authorizes the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Plaintiff's previous complaints involve issues that are entirely distinct from the facts relevant to the trial. They are therefore irrelevant. Fed. R. Evid. 401. Introducing evidence of those complaints is likely to prejudice the jury against Sodemann, as jurors may improperly infer that Plaintiff had ill motives in pursuing this case. What's more, if Defendants were to impugn Plaintiff's allegations in his previous PREA complaint, for example, Plaintiff would have to defend those allegations, creating lengthy digressions that would waste time and confuse the issues. The risk of unfair prejudice, confusion, and wasting time if evidence of Plaintiff's prior complaints is introduced greatly outweighs the probable value—if there is any—of such evidence.

For those reasons, Plaintiff requests the Court enter an order barring from trial any argument, questions, testimony, and evidence about Plaintiff's other PREA complaint or prisoner complaints, including evidence that he frequently complained to Defendants or others about prison conditions.

## IX.    Motion *in Limine* No. 9: To Exclude Settlement-Related Evidence

The Court should enter an order excluding from trial any evidence or testimony related to

16

settlement discussions or efforts in this case. Evidence of "conduct or a statement made during compromise negotiations" about a case is "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction." Fed. R. Evid. 408.

Under Rule 408, the Court should exclude from trial any testimony or evidence of the settlement demands and offers made to date. This includes testimony about Plaintiff's comments related to settlement. At her deposition, Defendant Pollesch testified that Plaintiff discussed settlement negotiations with her while the case was ongoing, as follows: "He would say how the State is trying to settle for a hundred thousand dollars and that is not enough for him, that he's been [seeing] similar cases and they're going for approximately $600,000 and that he does not intend to settle for less than that amount, and that if he wins this case, inmate Colin [Habram] would also begin a lawsuit if there is monetary gain." ECF No. 97, Pollesch Dep. 18:25–19:15. Plaintiff's statements about his valuation of the case in connection with settlement negotiations are inadmissible under Rule 408, and the Court should exclude evidence of those statements from trial.

### X.   Motion *in Limine* No. 10: To Question Department of Corrections Witnesses as Adverse

The Court should enter an order allowing Plaintiff's counsel to use leading questions when examining non-defendant Wisconsin Department of Corrections employees because they are identified with adverse parties. Plaintiff plans to call third-party correctional officer Jeffrey Koceja during his case. And Plaintiff may call third-party correctional officer Jeremy Hanni and mental health treaters Sally Jane Williams, Richardson N. Paye, Amanda Dowling, and K. Mohamed. "Ordinarily, the court should allow leading questions . . . when a party calls . . . a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). "The normal sense of a person

'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party." *Ratliff v. City of Chicago*, No. 10-CV-739, 2013 WL 3388745, at *6 (N.D. Ill. July 8, 2013).

The third-party WDOC employees are "identified with an adverse party" because they are or were employed at the same workplace as Defendants, Fox Lake Correctional Institution. *Cf. Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981) (holding that district court should have permitted leading questions during plaintiff's direct exams of non-defendant City of Chicago police officers in trial against City and another officer). Koceja witnessed Melnick's sexual harassment of prisoners in the halls of Fox Lake, including instances where Melnick told prisoners "fuck your mom" or "I fucked your sister." In the spring of 2022, Stephane Kingue reported to Koceja that Melnick made sexually harassing comments to him. Koceja reported the incident, which led to the investigation that uncovered Melnick's sexual harassment of Plaintiff and eventual firing. Hanni led the investigation into Melnick's misconduct, including by interviewing prison staff and some of Melnick's prisoner victims. Paye, Dowling, and Mohamed are mental health care providers at the prison who documented Plaintiff's injuries resulting from Defendants' misconduct.

Defendants' colleagues from the prison fall within the broad reach of Rule 611(c), and the Court should allow Plaintiff's counsel to examine them using leading questions at trial.

## XI.  Motion *in Limine* No. 11: To Bar Reference to Jurors' Pecuniary Interests

The Seventh Circuit has long held that arguments that play on jurors' pecuniary or taxpayer interests are unacceptable. Because pecuniary interests would necessarily disqualify a prospective juror from service, it is "patently improper to make an appeal to that interest" at trial. *United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir. 1973); *see also Moore ex rel. Estate of*

*Grady v. Tuleja*, 546 F.3d 423, 429 (7th Cir. 2008) (recognizing that an appeal to the financial

interests of jurors as taxpayers is "of course" generally improper); *Dyson v. Szarzynski*, No. 13-

CV-3248, 2014 WL 7205591, at *4 (N.D. Ill. Dec. 18, 2014) (similar). The Court should bar any

reference to the pecuniary interests of the jury, including references to the defense attorneys'

employment by the Wisconsin Department of Justice.

### XII.   Motion *in Limine* No. 12: To Exclude Non-Party Witnesses from the Courtroom

Under Federal Rule of Evidence 615, Plaintiff requests that the Court exclude non-party

witnesses from the courtroom so that they cannot hear other witnesses' testimony before they

testify. Plaintiff also requests the court prohibit the disclosure of trial testimony to witnesses who

are excluded from the courtroom and prohibit excluded witnesses from accessing trial testimony.

### XIII.      Motion *in Limine* No. 13: To Present Plaintiff's Expert by Zoom

Plaintiff requests permission to present his expert witness, James A. Ferreira, via

videoconference. "For good cause in compelling circumstances and with appropriate safeguards,

the court may permit testimony [at trial] in open court by contemporaneous transmission from a

different location." Fed. R. Civ. P. 43(a). "With improvements in technology, and the vastly

increased level of comfort and use of programs like Zoom and Skype, there is a growing body of

case law that supports the use of remote videoconferencing trial appearances under Federal Rule

of Civil Procedure 43(a)." *Truth Tellers, LLC v. Levine*, 662 F. Supp. 3d 605, 621 (N.D.W. Va.

2023) (citations omitted).

There is good cause to allow Mr. Ferreira to appear by Zoom or other comparable

videoconference software. Doing so will dramatically decrease the cost of his attendance at trial.

Fed. R. Civ. P. 1. Mr. Ferreira lives in Massachusetts, and appearing by videoconference will

spare the expense and resources associated with flying to Wisconsin for his testimony.

19

Presenting Mr. Ferreira by videoconference also minimizes the impact on his schedule of the inevitable uncertainty of when he will be called to the stand.

**XIV.        Motion *in Limine* No. 14: For Plaintiff to Appear in Non-Prison Attire**

Plaintiff requests permission to appear at trial in non-prison attire without any shackles visible to the jury. Plaintiff will arrange for clothes to be available for him by asking a family member to deliver clothing to his counsel or directly to the office of the Clerk of Court, 120 N. Henry Street, Room 320, Madison WI 53703, so that the clerk's office receives the clothing no later than 4:30 p.m. the Thursday before trial. *See Coder v. Giese*, No. 21-CV-109-WMC, 2025 WL 1057053, at *2 (W.D. Wis. Apr. 7, 2025) (granting this motion in another case under those conditions).

Dated: March 13, 2026                        Respectfully submitted,

                                             /s/ *Alison R. Leff*

                                             Thomas R. Kayes
                                             Alison R. Leff
                                             Loevy + Loevy
                                             311 N Aberdeen St, 3rd Fl
                                             Chicago, IL 60607
                                             (312) 243-5900
                                             alison@loevy.com

20