JASON SODEMANN,

      Plaintiff,

                                      Case No. 3:22-cv-00374-wmc

vs.

JOSHUA MELNICK, DANA MILLER, AND
MELISSA POLLESCH,

      Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO REOPENING DISCOVERY

Jason Sodemann was a prisoner in the unit where Joshua Melnick, Dana Miller, and Melissa Pollesch worked as correctional officers. Sodemann sued them because Melnick sexually harassed and groped him and Miller and Pollesch didn't do anything about it. He filed two pro se complaints. Both sought compensatory damage explicitly. That is significant. Under the Prison Litigation Reform Act, prisoner plaintiffs cannot obtain compensatory damages unless they show a physical injury. Sodemann alleged anxiety-induced insomnia and that Melnick hurt him while groping his groin.

Defendants must have recognized that Sodemann was seeking compensatory damages and, therefore, needed to show a physical injury. There was no other reason for them to serve a document request asking Sodemann to sign a release form for all Sodemann's medical records. Even for a case alleging mental and physical injury, that request was broad. It sought insurance documents and HIV records, among other things. Sodemann, then pro se, wrote to Defendants saying he didn't "think" "all" his health records were relevant. He did not say which documents he thought were or were not relevant; only that not all were. Rather than ask Sodemann what he

thought was irrelevant, Defendants wrote back, claiming they only wanted mental health records and providing an alternative release. Sodemann signed it. The mental-health records were produced. Defendants later served their second—and last—document request, seeking another release that asked for mental-health records for additional years. Sodemann signed that one too.

Defendants did no other written discovery, much less any related to Sodemann's mental or physical injuries. They did not depose any medical providers. And they only asked a handful of general questions at Sodemann's deposition about injuries and damages.

Defendants then moved for summary judgment. Among other things, they argued that Sodemann could not obtain compensatory damages because no reasonable jury could find that Sodemann had a physical injury. Sodemann opposed. The Court denied the motion.

After summary judgment, Defendants sought to reopen discovery. The Court held a hearing on that request. At the hearing, Defendants asked the Court to order Sodemann to supplement his production of medical records. The Court asked Defendants three times during the hearing about exactly which medical records they wanted. Each time, the response was a supplement of the mental-health record production. Defendants did not mention the physical-injury requirement at the hearing and they did not ask for any medical records apart from the supplementation of existing mental health record production. The Court ordered that supplementation. And Sodemann has complied with that order..

But now Defendants have filed a motion to compel records they easily could have sought years ago or, at least, asked for at the hearing. Having agreed in 2023 to seek only Sodemann's mental-health records, they now move to compel all of Sodemann's other prison medical records. They don't want a supplement—they already have it. They want the different categories of medical

records that they did not pursue before summary judgment or at any time until after the Court's recent hearing.

Their motion to compel should be denied. First, there's nothing to compel. Sodemann complied with Defendants' requests for production under Rule 34. And he complied with the Court's order to supplement those productions. To the extent the new, unlimited release Defendants asked Sodemann to sign after the recent hearing is construed as a new Rule 34 request, the Court explicitly refused to allow new written discovery. There is therefore no predicate to compel Sodemann to do anything. Second, the motion is untimely. Defendants are seeking what is likely 1,000s of pages of records just weeks from trial and, at this point, after motions in limine and exhibit lists are to be filed. There is no reason they could not have done this years ago. And their excuse is, frankly, farfetched. Defendants also seek to sanction Sodemann, barring his compensatory damages claim, because, despite complying with their actual discovery requests and the Court's recent order, he's not setting aside his trial preparation to voluntarily collect, review, and produce a huge amount of documents just weeks before trial. No law supports that unfair request. It should be denied too.

## BACKGROUND

### A. Sodemann alleges compensatory damages and physical injuries in his complaints.

Jason Sodemann filed a pro se complaint. ECF No. 1. In it, he alleged that Joshua Melnick was sexually harassing him and that Dana Miller and Melissa Pollesch failed to intervene to help him. *Id*. Sodemann alleged that the harassment was "causing anxiety to the point it keeps me up at night." ECF No. 1 at 5. He alleged "that there are rapists and homosexuals in here and I'm afraid someone may try to harm me." *Id*. at 6. He asked for "nomial (sic), punitive, and compensatory damages." *Id*. at 8 (emphasis added).

In a "brief in support of complaint" he filed with the complaint, Sodeman alleged other injuries. ECF No. 2. He alleged "trouble sleeping" and "panic attacks," *id*. at 3. He alleged "stress and anxiety," *id*. at 4. And he explained he talked to "psychological services on two separate occasions [about] anxiety and deprivation of sleep[.]" *Id*. at 4. Sodemann had "never experienced anxiety quite liked (sic) this before in my life." Id. He talked about how "cannot sleep" and about "waking up with [his] heart racing." *Id*. at 6.

Sodemann shortly filed an amended complaint. ECF No. 11. There, he alleged Melnick "patted me down twice in which he touched my groin region … ." *Id*. at 1. Sodemann described the pat downs as "forcible" and "aggressive." *Id*. at 2. Again, Sodemann sought "compensatory" damages. *Id*. at 10.

## B.    Defendants request a broad release for all Sodemann's medical records, then limit their request to mental health records.

A few months after Sodemann filed his complaints, the Court granted Sodemann leave to proceed on several claims. ECF No. 18. Sodemann was granted leave to pursue a battery claim, which requires a plaintiff to show "harmful or offensive bodily contact." *Id*. at 4. The order made no mention of the physical-injury requirement in 47 U.S.C. § 1997e(e).

A few months after the Court's order allowing Sodemann's case to proceed, Defendants served Sodemann with a single request for production. ECF No. 122-1 at 1-6. The request did not ask Sodemann to produce any existing documents. It instead asked him to sign a prefilled out medical release for "all records, reports, documents, materials, notes, memoranda, correspondence, x-rays, photographs, insurance forms and all billings (sic) in [Department of Corrections'] possession that relate to my physical or mental condition." ECF No. 122-1.

Sodemann, still pro se, wrote Defendants a few days later asking for a phone call to discuss discovery. ECF No. 122-2. He wrote "I think it would be helpful if I knew what you

weren't willing to give me and what I wasn't willing to give you up front and maybe we could come to an agreement." *Id*. He used the release requested as an example: "I don't think all of my health records are within the scope of this case." *Id*.

Sodemann didn't explain which health records he thought were irrelevant or why. He did not mention compensatory damages, the physical-injury requirement, or anything related to either. He did not say explicitly or implicitly that he was disclaiming the compensatory damages he requested in his complaints or disclaiming having suffered a physical injury within the meaning of § 1997e(e). He said only that he thought fewer than all his health records were relevant.

About a week later, without Sodemann giving Defendants any more information about his position, Defendants wrote back to him. ECF No. 122-3. Defendants letter referenced Sodemann's letter: "You also state that you did not believe all of your health records are within the scope of this case." *Id*. Rather than ask Sodemann want he meant or agree to talk to him about it, Defendants unilaterally narrowed their request to mental health records only: "We only intend to request your PSU [Psychological Services Unit] records, as your psychological and emotion (sic) state is implicated by the claims at issue in this lawsuit." *Id*. Defendants enclosed with their letter a revised release, seeking records "that relate to my mental condition from 2021 through 2022." *Id*. at 3.

Defendants letter did not say why Defendants narrowed their request. It did not say that they were reading Sodemann's letter as any kind of concession related to compensatory damages or the physical injury requirement. And it did not reserve Defendants any right to later revisit the request for production and again seek a release of the original scope.

Sodemann promptly signed the revised release. ECF No. 122-4.

Months later, Defendants served one additional request for production—the only other written discovery they served in the case. Kayes Decl. ¶¶ 4-7. This second request asked Sodemann to sign another release. *Id*. The only difference between this new release and the one Sodemann had already signed was the timeframe: the new request sought a release of "mental condition" records from 2021 "through the present" instead of, as had the earlier release, through 2022. Additional PSU records were obtained and produced. *Id*.

Defendants served no interrogatories or other written discovery at all, much less any specifically aimed at determining whether Sodemann was claiming a physical injury within the meaning of 42 U.S.C. § 1997e(e) or, if so, what that injury was. *Id*.

**C.     Sodemann testifies at his deposition about physical injuries.**

Defendants deposed Sodemann. ECF No. 65. Sodemann testified consistently with his early pro se filings about his injuries. He described the pain he felt during Melnick's pat downs. *Id*. at 187-190. And he testified about his insomnia. *Id*. at 209, 213.

Defendants never asked Sodemann whether he was claiming a physical injury, whether in layman's terms or by reference to the statute. *Id*. The word physical appears once, in an answer from Sodemann, where he says that psychological pain is an injury "even if it's not a physical issue … ." ECF No. 65 at 181.  Sodemann never disclaimed compensatory damages or a physical injury at his deposition.

**D.     The Court denies summary judgment on the physical injury requirement.**

Defendants moved for summary judgment. ECF No. 71. In their motion, they took aim at the physical injury requirement. *Id*. at 23-24. Defendants acknowledged that "[i]n his Complaint, Sodemann requests compensatory damages." *Id*. at 23. They then stated, with no explanation, that Sodemann wasn't entitled to "compensatory damages" because "Sodemann does not allege

and has no evidence of a physical injury." ECF No. 71 at 23-24. That was the sum total of their argument on this point. Defendants did not argue that Sodemann had forsaken compensatory damages by writing his letter in response to their first document request or by signing a release limited to mental-health records.

The Court rejected Defendants' arguments. ECF No. 110 at 28. It reasoned that "Since plaintiff has presented some evidence that prolonged, persistent sexual harassment by defendant Melnick caused extreme anxiety, panic attacks, and insomnia on a sustained basis, for which plaintiff sought medical attention, compensatory damages may still be available." *Id.*

**E.      Defendants seek post-summary judgment discovery, seeking supplementation of Sodemann's production of mental health records.**

After summary judgment, Defendants requested additional discovery over Sodemann's opposition. *E.g.*, ECF Nos. 110, 113, 116. Defendants initially sought additional written discovery. ECF No. 113 at 2 (¶ 7). The Court rejected that request at a hearing: "I'm not going to allow any more written discovery." ECF No. 117 at 18:24-25.

At that hearing, Defendants also requested that Sodemann supplement the production of mental health records he had already made, by bringing it up to date. ECF No. 117 at 5, 8. Defendants put it this way: "And so we did ask for some discovery related to plaintiff's medical records. We had to ask plaintiff to supplement those records, and I would ask the plaintiff, at the very least, supplement those records here now." *Id.* 5:24-6:2. The Court later asked Defendants to clarify what medical records they were seeking: "And I think you mentioned you want some sort of supplement to the medical records. Help me better understand what you mean by that." *Id.* at 8:15-9:4. Defendants again referred to the old production of mental health records: "Right. So we've asked for plaintiff's medical records. He's put his mental health at issue, and plaintiff did provide those … through our summary judgment filing … ." *Id.* The Court asked for more

clarity: "Other than that supplement, are you contemplating other written discovery? What else specifically are you talking about?" *Id*. at 9:1-3. Defendants responded: "We are not, Your honor." *Id*. 9:4. The Court then agreed to order Plaintiff to supplement: "Supplementing the medical record I think makes good sense." *Id*. at 19:1.

To make sure he understood the Court's decision, Sodemann asked if the Court was ordering "more up-to-date versions of what we already agreed to produce" or "different records than we produced"? *Id*. at 20:12-21:10. The Court thought the idea was to provide "up-to-date" records only but referred the question to Defendants. *Id*. This was the third time the Court asked Defendants at the hearing what additional medical records Defendants wanted Plaintiffs to produce. Defendants again referred to supplementing the existing production: "Right. So I believe there would probably be, like, a year and a half of medical records that are missing at this point." *Id*.

During the hearing, Defendants did not mention or request anything other than supplementation of what had already been produced, which were the mental health records from the PSU. Defendants did not request and did not express any desire for any other types of medical records. And they did not mention the physical injury requirement.

**F.     After the Court orders Sodemann to supplement his existing production of mental health records, Defendants send Sodemann a release for all medical records for all time.**

After the hearing, the Court entered an order reopening "discovery in a limited fashion." ECF No. 116. The Court ordered Sodemann to "supplement the production of his medical records to ensure they are up to date for trial." *Id*. (That has been done—all new PSU records were obtained and produced. Kayes Dec. ¶¶ 8-9.)

A few days after the Court entered its order, Defendants sent Sodemann a new release. The email to which the release was attached said "Please supplement Mr. Sodemann's medical records" and asked that he "sign the attached release … ." ECF No. 122-6. But the release was not about supplementing Sodemann's mental health records from the PSU. It was instead a release seeking Sodemann's "entire record," including both mental and physical health-related documents. ECF No. 122-5. This was not the request for supplementation that Defendants had presented to the Court—it was a request for everything. The new release went back to 2020 even though Sodemann had already produced mental health records from 2020 through roughly the time of summary judgment. *Id*.

Regrettably, Sodemann's counsel did not immediately realize that the new release went beyond the Court's order. But, by January 20, 2026, Sodemann had realized and shared his position with Defendants: "We understand the court's order to mean that we're required to supplement that production [meaning the PSU/mental health production originally made], not produce documents Defendants never requested." ECF No. 122-8 at 2. Defendants wrote back, insisting that their "First Request for Productino (sic) of Documents, [] requested 'all records, reports, documents, materials, notes, memoranda, correspondence [and so on] that relate to my physical or mental condition[.]'" Id. at 2.

That was not accurate. Defendants' first request for production was for a release seeking those records—not the records themselves. And—more important—Defendants narrowed that request to just PSU records, as reflected in Defendants' August 2023 letter and the release they prepared and sent with it. ECF No. 122-3. Sodemann pointed that out on January 21, 2026. ECF No. 122-8 at 1. Defendants emailed back, asking Sodemann to repeat his "understanding of the

[2023] negotiation" between pro se Sodemann and Defendants, but Sodemann (whose counsel was just about to start a two-week trial) was unable to respond to the email.

**G.    Defendants wait over a month to move to compel, seeking thousands of pages of irrelevant medical records less than 8 weeks before trial.**

After the correspondence on January 21, 2026, Defendants let the matter drop for just over a month, reaching out again on February 25. ECF No. 122-9. On a phone call and in a follow-up email, Defendants took the position—for the first time—that Sodemann's August 2023 letter, ECF No. 122-2, somehow misled them into thinking that he had abandoned his compensatory damages claim by disclaiming a physical injury. ECF No. 122-9 at 6. They had not raised this in their summary judgment motion or during the hearing about whether to re-open discovery.

In the follow-up email, Defendants claim that they took Sodemann saying "I don't think all my health records are within the scope of this case" as him "clearly indicat[ing] that he believed his physical health and physical condition were unrelated to the claims in his case." ECF No. 122-9 at 5. The email also falsely claims that it was Sodemann, rather than Defendants themselves, who prepared the revised release that was limited to mental records: "Mr. Sodemann sent defense counsel an edited medical authorization that he limited to … ." *Id*. Defendants did not repeat that false claim in their motion to compel, admitting that they prepared the release. ECF No. 121 at 6.

Sodemann responded, echoing his position that it was too late in the game to go back, collect, review, and produce what could potentially be thousands of pages of irrelevant medical records. ECF No. 122-9. Defendants then filed this motion. ECF No. 121. Trial is less than 8 week away. ECF No. 112.

## LEGAL STANDARD

Motions to compel are governed by Rule 37 of the Federal Rules of Civil Procedure. The rule lists the "Specific Motions" that may be brought. Fed. R. Evid. 37(a)(3). Relevant here, a "party seeking discovery may move for an order compelling … production" "if … a party fails to produce documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). Or, "[i]f a party … fails to obey an order to provide or permit discovery … the court … may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).

Certain rules apply to all motions to compel. For example, "[w]hen a district court considers a motion to compel, it must evaluate such factors as timeliness … ." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (citing *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir.1996)). A lack of diligence in the pursuit of even a valid motion to compel is grounds for denying the motion. *E.g.*, *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (affirming district court order denying motion to compel as untimely).

## ARGUMENT

The Court should deny Defendants' motion to compel for either of two independently sufficient reasons. First, there is no valid basis to compel Sodemann to produce anything because, as Defendants appear to concede, he complied with their request for production and satisfied the Court's order to supplement. Second, even if there were valid grounds for the motion, it is untimely. Moreover, granting the motion would prejudice Sodemann far more than denying it could prejudice Defendants. Any prejudice to Defendants would also be of their own making. Finally, Defendants request for exclusion sanctions is legally meritless and fundamentally unfair.

**A.** **The Court should deny Defendants' motion because there is no legal basis to compel Sodemann to produce more medical records.**

Typically, before a motion to compel production of documents is filed, the offending party must either "fail[] to produce documents … as requested under Rule 34," Fed. R. Civ. P. 37(a)(3)(B)(iv), or "fail[] to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). Sodemann has done neither, so Defendants' motion fails.

Sodemann signed the releases Defendants requested with their first and second requests for production under Rule 34. The first request sought a release for Sodemann's entire medical file but, after Sodemann wrote to confer, Defendants immediately and without even allowing Sodemann to explain his objection, chose to narrow their request to mental health records for two years. ECF No. 122-1, 122-2, 122-3. They later issued a second request for mental health records for additional years. Kayes Dec. ¶¶ 4-7. Sodemann signed the releases and those records have all been produced. *Id*. Sodemann has not failed to produce records as requested under Rule 34.

Nor has he failed to obey a discovery order. The only discovery order on the docket or mentioned in Defendants' motion is the recent order to supplement his production of medical records. ECF No. 116. Sodemann complied with that order. Kayes Dec. ¶ 8.

In their motion, Defendants do not dispute either point. They do not claim that Sodemann refused to sign the narrowed release they asked for in 2023 with their first request for production. Far from it. They acknowledge that, while Sodemann did not give them what they originally asked for, he did sign what they agreed to accept. ECF No. 121 at 3. They do not argue, nor should they, that a responding party should be faulted for providing exactly what the requesting party agreed to accept. Defendants also do not specifically claim that Sodemann's failure to produce all his medical records violates the Court's recent order. Nor could they—given that the Court gave them three opportunities to explain what they wanted Sodemann to supplement and,

each time, they told the Court they wanted Sodemann to bring his mental health records up to date. Defendants' motion therefore contains no recognizable legal basis for ordering Sodemann to produce anything more than he already has.

Defendants cite only Rule 37(a) itself. They do not identify which of the "Specific Motions" authorized by the rule they are making. And they do not cite any case—nor can Sodemann find one—where a court has compelled a party to produce documents that were excluded from a request by agreement following a meet-and-confer process. Defendants also cite no case—nor can Sodemann find one—saying that the Court's substantial inherent power to supervise discovery enables it to simply throw out all the rules and order productions without any predicate like an unanswered request or a violated court order. Motions to compel are the end of the process, not the beginning.

Defendants' motion offers nothing more to justify Court action than the possible relevance of the requested records. But relevance alone does not justify a motion to compel, much less one this close to trial on an issue Defendants should have pursued years ago. Defendants' motion is nothing more than a sideways request for exactly what the Cout recently said it would not provide—additional written discovery. At the recent hearing the Court recognized that "[t]here isn't much time left, and that is really the risk that defendants took when they sat on their hands and didn't even take minimal written discovery … ." ECF No. 117 at 17:16-18. "As far as written discovery goes, that should have been out the door very early on in the case. … I'm not going to allow any more written discovery." *Id*. 18:14-25. Not only did the Court refuse Defendants' request for additional discovery, Defendants specifically disclaimed wanting additional written discovery about Sodemann's medical records. ECF No. 117 at 8:15-9:4 ("THE COURT: Other than that supplement, are you contemplating other written discovery?

… MS. SICKEL: We are not, Your Honor."). The Court should simply refuse—again—to give Defendants what Defendants told the Court they didn't want.

**B.**    **Even if there were a legal basis to compel, the Court should still deny Defendants' motion as untimely.**

It is axiomatic that the Court can deny a motion to compel as untimely. *E.g.*, *Packman*, 267 F.3d at 647. Courts in this circuit deny motions to compel filed, like this one, "on the eve" of trial. *E.g.*, *Froemming v. City of W. Allis*, 2022 WL 4536857, at *3 (E.D. Wis. Sept. 28, 2022). And alleged "ambigu[ity]" about the relevance of an issue to discovery is no excuse. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 644 (7th Cir. 2011). Parties who wait in the face of discovery ambiguity are "playing with fire[.]" *Id*.

Defendants' motion is late in all sorts of ways. If the motion is based on the original request for production, then the gap of 2 years and 9 months is inexplicable. If the motion is based—as it seems to imply—on Sodemann's summary judgment opposition, that was filed in September 2024. If that were the case, at a minimum, Defendants should have raised the need for all Sodemann's medical records—not just the mental health ones—at the recent hearing. They did not. ECF No. 117.

Even Defendants' pursuit of this motion has been dilatory. Defendants knew that Sodemann was not going to produce records beyond what he was ordered to supplement on January 21, 2026. ECF No. 122-8. But they waited more than a month after that to request to meet and confer more and then waited until after the new discovery period closed to file their motion. ECF No. 122-9 at 5 (Feb. 25 email); ECF No. 122 (filed 3/2/26); ECF No. 116 ("limited discovery" period closing "February 27, 2026").

While waiting a month for no reason might not justify denying a motion to compel in all cases, it certainly does here. Because Defendants waited, they have required Sodemann to file

this opposition on the same day his pretrial filings, including motions in limine, are due. So instead of working on preparing for trial, Sodemann is opposing a discovery effort that could have been undertaken in 2023.

Defendants' case on timeliness is, frankly, hard to swallow. They claim Sodemann's complaint "did not allege any physical injuries purportedly caused by Defendants." ECF No. 121 at 3. But they ignore the allegations Sodemann summarized above and the fact that Sodemann was obviously pursuing compensatory damages, which, under 42 U.S.C. § 1997e(e), required a physical injury. They also fail to explain why, if they thought that the complaint wasn't alleging a physical injury or compensatory damages, they served a request for production for all Sodemann's health records.

From there, Defendants claim that Sodemann's August 2023 letter led them to think that "Plaintiff was not pursuing a claim that he suffered a physical health issue." ECF No. 121 at 7. That claim too is farfetched. All pro se Sodemann wrote was "I don't think all of my health records are within the scope of this case." ECF No. 122-2. He did not say his physical health records were outside the scope; he did not mention the physical-injury requirement; he did not disclaim a physical injury; and he did not forsake compensatory damages. The release mentioned things like "insurance forms" and "billings," his "Juvenile Corrections Health Care Record," his "HIV and/or AIDS test results and intervention program records," and so on. The idea that a trained lawyer read Sodemann's ambiguous sentence, in light of Sodemann's complaints seeking compensatory damages, and thought the sentence meant that Sodemann was disclaiming a physical injury rather than objecting to disclosure of dental records, insurance documents, or HIV tests, is highly unlikely. Yet that is Defendants' position.

And that position is undercut further by what Defendants did after receiving Sodemann's letter. Defendants did not write to confirm Sodemann's alleged concession. And the letter they did write does not mention the concession or their current interpretation at all. ECF No. 122-3. It just says "We only intend to request your PSU records," as if, perhaps, that was the plan all along. *Id*. Then they sent a narrower release for mental health records—records that were only relevant to the compensatory damages claim they now insist they thought Sodemann was giving up. But the only reason for Defendants to seek those records was because they understood compensatory damages were in the case. Their motion offers no alternative explanation.

**C.     Granting the motion would prejudice Sodemann more than denying it would prejudice Defendants—and that prejudice is all of their own making.**

It is now less than 8 weeks to trial. There is much to do. Requiring Sodemann to, at this late date, collect, review, and disclose over six years of medical records would be an enormous distraction from legitimate trial preparation. And it wouldn't end there. Sodemann does not know what is in his complete medical records nor how many pages they are. Counsel has seen medical files from the Wisconsin Department of Corrections; they can run to hundreds or thousands of pages per year. Sodemann's lawyers would have to review every page. There might be documents to add to the exhibit list or things that Sodemann would need to move in limine to exclude as irrelevant or substantially more unfairly prejudicial than probative. That is very normal in counsel's experience when dealing with prison medical records. But, because this opposition is due on the deadline for motions in limine and exhibit lists, Sodemann would first need to move for leave. So, at a minimum, he would have to engage in extra motion practice at a point even closer to trial and, worst case, the district court might not allow Sodemann leave.

In short, granting the motion puts a huge time burden on Sodemann when he can least afford to spare the time. When he should he be working on trial preparation—to ensure that the case comes in smoothly and doesn't waste the Court or jury's time.

Against that burden, Defendants offer almost no counterweight. They just have speculation: Sodemann is claiming a physical injury caused by us and there might be medical records that establish an alternate cause of that injury. ECF No. 121 at 1, 5. They also refer to a "presumption" that they need to rebut that Sodemann's injuries were caused by Defendants— even though there is no such legal presumption. ECF No. 121 at 10. Sodemann bears the burden of proof on the issue. What's left is a fishing expedition: maybe in thousands of pages of medical records Defendants can find something else that might have caused Sodemann's insomnia and other injuries. That speculative benefit does not justify relieving Defendants of the consequences of their discovery decisions much less call for diverting Sodemann's attention from preparing for trial. Alternate causes have been on the table since Sodemann asked for compensatory damages in his complaint and alleged his anxiety, insomnia, and other injuries. Defendants had ample opportunity to explore those issues in discovery, including Sodemann's deposition.

That they failed to take advantage of that opportunity should not be transformed into Sodemann's problem (or the Court's). A party cannot use prejudice of its own making to justify discovery. *E.g.*, *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("A [party] cannot manufacture exigency by tarrying."); *Malone v. ASAP Trans Corp.*, 2025 WL 3463619, at *2 (N.D. Ill. July 7, 2025) ("Third, Defendants assert that they would be prejudiced in their case if they were forced to move forward without the late-produced documents. That prejudice, if it exists, is simply a problem of the Defendants' own making.").

**D.** **Defendants request to bar Sodemann from seeking compensatory damages is lawless and unfair.**

Defendants ask that Sodemann "be precluded from pursuing compensatory damages related to any physical or emotional injuries he suffered" if he "refuses to release[]" the additional medical records. ECF No. 121 at 9. Defendants, in other words, want the Court to bar Sodemann's damages case because he is not—in the few weeks before trial—willing to collect, review, and produce thousands of records that they failed to obtain during years of discovery, failed to ask the Court for at the recent hearing, that may have zero relevance to the case, and that they could not cite any legal basis to compel Sodemann to provide. This extraordinary request should be denied.

This request goes far beyond the rules. If a party fails to disclose something required under Rule 26(a) or (e) or fails to respond to an interrogatory or document request, the traditional remedy is to bar the party from using only the undisclosed "information[.]" Fed. R. Civ. P. 37(c)(1). Even though Sodemann has done no such thing, Defendants want more. The sanction Defendants request, taking away Sodemann's compensatory damages, is "directing that … designated facts be taken as established for purposes of the action," Fed. R. Civ. P. 37(b)(2)(A)(i). Nothing Sodemann has done remotely justifies that. Back in 2023, Sodemann signed the release Defendants asked him to sign. After the Court ordered Sodemann to supplement his production of medical records, Sodemann did just that. He has not refused to comply with any discovery request or Court order. "[C]ulpability" matters when determining whether sanctions, such as striking the main category of damages from the case, are appropriate. Spamhaus Project, 658 F.3d at 642. Here, there is none.

Even Sodemann had failed to respond to a document request or violated a Court order, Defendants' requested sanction goes too far. When another litigant failed to timely disclose

damages calculations and witnesses, the Court, while excluding them, still "generously allowed [the offending party] a chance to prove its damages using the information it had disclosed in a timely manner." *Spamhaus Project*, 658 F.3d 637, 644 (7th Cir. 2011). Here, Sodemann has pled, testified about, and argued at summary judgment his theory of physical injury. There is basis for barring him from pursuing it when even genuinely bad actors in discovery like the litigant *e360* can still pursue their cases with what they properly disclosed.

Defendants' entire request sets fairness upside down. Defendants had the opportunity, but failed, to pursue these documents at the beginning of discovery and at any time thereafter. The Court three times asked Defendants about medical record discovery at the recent hearing but Defendants made no mention of anything other than supplementation and no mention of the physical injury issue. Defendants then tried to sneak what was tantamount to a new request for production into the release that was meant for supplementation. And now they ask the Court to punish Sodemann because of their own failings. It makes no sense.

The two cases they cite do not help them. Both cases involved motions to compel filed during the normal discovery period. *Jackson v. Esser*, 2021 WL 5492906, at *1 (W.D. Wis. Nov. 23, 2021) (referring to recently denied motion for summary judgment based on exhaustion); *Lacey v. Tarr*, 2010 WL 1257801, at *1 (E.D. Wis. Mar. 26, 2010) (referring to motion to dismiss). Neither granted a request for documents made outside of discovery and just weeks to trial. And neither granted a motion to compel where the plaintiff had already signed the release the defendant provided to them, as happened here in 2023.

Both cases are distinguishable in other ways too. In *Lacey*, the pro se plaintiff there did not oppose the motion to compel and only argued, apparently when conferring, that her medical

records should not be produced because they "contain falsehoods and [are] unreliable." *Id*. Sodemann has opposed and made other arguments.

And *Jackson* hurts Defendants. Even though it excused a year-long delay in filing the motion to compel, it did so—again—with no concern for an impending trial date and with no indication that discovery was closed. *Jackson*, 2021 WL 5492906, at *3. It hurts Defendants because it warned the same office that represents Defendants here to be more diligent in discovery: "[T]he court expects defense counsel to avoid similar mistakes in the future … ." *Id*. By citing the case, Defendants just advertise their failure to heed that warning. And, having failed to heed that warning, they now compound the error by seeking relief to which they are not entitled. The Court should say "no."

## CONCLUSION

In recent years, the Seventh Circuit has felt the need to point out that procedural rules apply, not just to pro se prisoner plaintiffs, but also to the lawyers who defend the cases prisoners file. *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). "Scheduling orders and court-imposed deadlines matter." *Id*. "We could fill page after page with citations to cases brought by prisoners that were dismissed for failing to follow court rules or deadlines." *Id*. "If prisoners are held to that standard, their opponents should be too." *Id.* Defendants are habitually asking not to be held to any standard. But they must be.

//

//

Sodemann asks only that Defendants be held to the normal standards of the Federal Rules. Under those standards, their motion to compel is unsupported, baseless, and just plain too late. Their request for sanctions does not come close to satisfying the bar for such a serious sanction, nor did they even cite caselaw or rule about what does justify such a sanction. The Court should deny their motion.

Dated: March 13, 2026

Respectfully submitted,

 /s/ Thomas R. Kayes
Thomas R. Kayes
Alison R. Leff
LOEVY + LOEVY
311 North Aberdeen, Third Floor
Chicago, Illinois 60607
t. 312.243.5900
kayes@loevy.com
alison@loevy.com

Attorneys for Plaintiff