IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON SODEMANN,

                Plaintiff,                        OPINION AND ORDER

    v.

                                                22-cv-374-wmc

JOSHUA MELNICK, DANA MILLER,
and MELISSA POLLESCH,

                Defendants.

---

      Plaintiff Jason Sodemann, a state prisoner, is proceeding on claims that defendant Joshua Melnick sexually harassed him and subjected him to unnecessary pat searches in violation of the Eighth Amendment, as well as retaliated against him in violation of the First Amendment for threatening to file a grievance about Melnick's harassment. Plaintiff is also proceeding on an Eighth Amendment claim that defendants Dana Miller and Melissa Pollesch knew that Melnick was sexually harassing him, but failed to intervene. The case is scheduled for a jury trial commencing on April 27, 2027, with final pretrial conferences ("FPTC") scheduled for April 7 at 2:30 p.m., and if necessary, on April 21 at 2:30 p.m. This order addresses the parties' motions in limine ("MILs"). More specifically, in omnibus motions, plaintiff has filed 14 motions in limine, while defendant has filed 15 more. (Dkts. ##124, 137.) For reasons explained below, these motions will be granted, reserved and denied in part.

OPINION

## A. Plaintiff's Omnibus Motion in Limine (dkt. #124)

### 1. Evidence of Defendants' Good Character

Pursuant to Federal Rules of Evidence 401, 402, and 404, plaintiff moves to exclude evidence that plaintiff and other prisoners regarded the defendants as "well-meaning people." (Dkt. #124, at 3-5.)  Specifically, plaintiff seeks to exclude questions or testimony about whether and why he stated at his deposition that he believes defendant Miller is "a good person" who is "fair."   Plaintiff also seeks to exclude testimony about why he previously stated at his deposition that he thinks Pollesch is a "nice person."  Similarly, plaintiff seeks to exclude testimony from an inmate witness, James Cansler, who stated at his deposition that he thought Miller was "fair" and "trustworthy" and was asked about whether he considered Melnick "funny."

Defendants do not address the testimony about Miller or Pollesch.  Therefore, that part of the motion is GRANTED as unopposed.  However, defendants argue that the jury must be allowed to hear any and all evidence relevant to Melnick's subjective intent in engaging in the objectionable conduct because the Eighth Amendment includes a subjective element.  (Dkt. #148, at 2.)  Generally, a prison official's conduct does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless "two requirements are met."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  First, the conduct "must be, objectively, 'sufficiently serious.'"  *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Conduct is sufficiently serious -- or objectively harmful -- if it is "incompatible with the evolving standards of decency that mark the progress of a maturing society" or "involve[es]

2

the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). Second, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). In other words, the official must act with "'deliberate indifference' to a substantial risk of serious harm" of which they are "subjectively aware." *Id*. at 828.

Subjective intent is not only relevant in a harassment case like this one, but also a prerequisite to satisfy the Eighth Amendment standard. *See Massey v. Hutschenreuter*, No. 20-cv-159-jdp, 2021 WL 3856743, at *4 (W.D. Wis. 2021) ("[H]arassment is actionable when the conduct is ongoing and *intended* to inflict physical or psychological harm on the inmate.") (emphasis added) (citing *Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019) and *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2018)). However, general characterizations as to his "fairness," "decency," "goodness" or general "kindness" are all improper propensity evidence under Fed. R. Evid. 404(a).

Accordingly, the motion is DENIED as to inquiries into a witness's perceptions of defendant Melnick's subjective intent in making derogatory statements to plaintiff or similar statements to others, and general reputation for honesty if impugned, assuming a sufficient foundation is laid for either, but not as to general conformity or propensity evidence.

### 2. Profanity in Prison

Plaintiff argues that defendants should be prohibited under Fed. R. Evid. 402 and 403 from arguing that plaintiff's rights were neither violated nor was he harmed by defendant Melnick's so-called "harassment," because prisoners at Fox Lake Correctional

Institution often use profane words and would falsely accuse each other of being "gay." (Dkt. #124, at 5-6.)  Plaintiff argues that evidence of prisoners' use of profane language is misleading, because it creates a "false equivalence between prisoners and correctional [officers]," who are in a position of power and responsible for persons in their care.

Defendants argue that evidence of the ubiquity of profanity in prison is relevant to both a jury's assessment of the objective and subjective elements of the plaintiff's Eighth Amendment claim.  *Farmer*, 511 U.S. at 834.  Objectively, the prevalence of profane language, including comments about others' sexual orientation or preferences, may provide some context for defendants' alleged conduct.  Subjectively, the prevalence of foul language in prison may be relevant to Melnick's state of mind.  Still, plaintiff is entitled to a cautionary instruction against making a false equivalency between comments by other inmates and those in positions of authority like defendant.

Because the use of profane, derogatory language is the basis of plaintiff's sexual harassment claim, this motion must be DENIED in part.  However, defendants may not offer evidence or make any argument that defendant Melnick's conduct should be excused as equivalent to that of prisoners.

### 3.  Melnick's Motives

Plaintiff argues that defendants should be prohibited from asking third-party witnesses about whether they *thought* defendant Melnick was "just joking" when he was verbally abusing plaintiff.  (Dkt. #124, at 6-8.)  Plaintiff does *not* seek to preclude defendants from asking Melnick if he was joking or from eliciting facts from other witnesses about what they observed about Melnick's conduct.  (*Id*. at 8.)  But plaintiff argues that

lay opinion testimony about another person's mental state is inadmissible under Federal Rule of Evidence 701 because it is unhelpful to the jury.  Plaintiff argues further that such evidence is inadmissible under Rule 403, because these opinions would have little probative value.  Plaintiff reasons that whether the witness thought Melnick was joking  (or not) depends on facts relevant to that inquiry or whether the witness has "idiosyncratic values or limited knowledge of Melnick and Sodemann." (Dkt. #124, at 8.)

Defendants contend that this evidence is relevant to plaintiff's Eighth Amendment claim, which will require plaintiff to do more than show how Melnick and he felt about the situation.  Plaintiff will have to show: (1) Melnick's comments were objectively, sufficiently serious; and (2) Melnick was deliberately indifferent to Sodemann's health or safety. *Walton v. Nehls*, 135 F.4th 1070, 1072 (7th Cir.), *cert. denied*, 146 S. Ct. 295 (2025).  As explained at summary judgment in this case, "[t]he test for what constitutes 'cruel and unusual punishment' is an objective one. It is not the actual fear of the victim, but what a 'reasonable' victim would fear.'" (Dkt. #110, at 12) (citing *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009)).

Leaving the issue of lay opinion aside for the moment, a witness can certainly be asked how *he or she* understood the intent of Melnick's remarks and why.  The jury can then assess what value that point of view has to the issues before it.  Even if asked in the form of "lay opinion," which would seem unnecessarily formalistic, the Seventh Circuit has held that such testimony about the mental state of another is neither conclusively nor presumptively inadmissible.  *See United States v. Guzzino*, 810 F.2d 687, 699 (7th Cir. 1987) (holding that "lay opinion testimony as to the mental state of another is indeed competent

under [Rule 701]").  In determining whether that testimony *should* be admitted, the court will employ the criteria set forth in Rule 701:  "The testimony must be within the personal knowledge of the witness and 'helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue.'"  *Guzzino*, 810 F.2d at 699 (citing *Bohannon v. Pegelew*, 652 F.2d 729, 732 (7th Cir. 1981) and quoting Fed. R. Evid. 701)).

Thus, this motion is GRANTED in limited part and otherwise DENIED to the extent that no witness may opine about what *another person* was thinking, but any witness may testify about what *they* saw, heard or felt another person do or say, even if that observation may be suggestive of another person's state of mind.

### 4.  Third-Party Conduct

Plaintiff argues that defendants should be prohibited from asking third-party witnesses whether they have ever joked around about someone being "gay" or insulted another person for their sexuality because such evidence is irrelevant and would waste the jury's time.  (Dkt. #124, at 8-9.)  In response, defendants indicate that they do not intend to spend "much time on this line of questioning," but counsel should be permitted to question witnesses as to whether "gay" is a term sometimes used in prison by inmates to mean stupid or the like, as opposed to homosexual.  (Dkt. #148, at 11.)  Defendants further argue that this evidence may be relevant to at least two issues:  (1) to the extent inmates believed Melnick was calling Sodemann "gay" as an insult, as opposed to stating information about Sodemann's sexuality, it is relevant to how objectively serious the comments were; and (2) evidence about the use of the term "gay" is especially relevant to the claim against Miller.

6

Defendants further note that another inmate (Bates) complained to Miller that he did not believe it was right that Melnick was going around "talking crazy," then "writing guys up" in conduct reports. (Miller Decl. (dkt. 74) ¶ 25.) More specifically, Bates complained that Melnick "should stop making his 'gay-ass comments' to him, if he was then going to write Bates 'bogus' or 'petty' conduct reports," although Bates refused to be any more specific about what Melnick was saying. (*Id*. ¶¶ 26-27.) Miller will also testify consistent with his summary judgment declaration that Bates used the language "gay-ass" in many contexts, and Miller believed that when Bates said "talking crazy" or making "gay ass comments," he meant that Melnick was attempting to make jokes or talking to inmates using slang or curse words in jokes. (*Id*. ¶ 30.) Thus, Miller did not believe Melnick was literally identifying Bates or any other inmate as homosexual.

Given plaintiff's argument about the risk associated with being identified as homosexual in prison, defendants maintain that context matters as to whether Miller disregarded a substantial risk to safety in violation of the Eighth Amendment. Just as with plaintiff's MIL No. 3, therefore, the court GRANTS and DENIES this motion in part and will allow limited testimony as to how others within the institution (both inmates and guards) used the terms "gay" or "gay-ass," as well as testimony about the risks that may or may not be entailed in an inmate being labelled as such.

### 5. Disciplinary History

Plaintiff moves to exclude testimony about disciplinary conduct reports filed against himself and other inmate witnesses. (Dkt. #124, at 9.) In particular, plaintiff argues that conduct reports for his soliciting staff and drug use did not involve any defendant or

7

witness to this lawsuit, and are irrelevant and unduly prejudicial. (*Id*.) Plaintiff also points out that he received conduct reports for disciplinary infractions for which he was later determined to have been falsely accused. (*Id*.; Dkt. #124-3.) Accordingly, plaintiffs ask the court to bar any argument, questions, and evidence mentioning plaintiff's or other inmates' prison disciplinary history. (Dkt. #124, at 11.)

In contrast, defendants have moved to allow questioning about the conduct report filed against plaintiff for soliciting staff. (Dkt. #137, at 34; Defts' MIL No. 9.) Defendants also move to allow cross-examination of plaintiff and any other inmate witness about conduct reports they may have received for lying. (Dkt. #137, at 35; Defts' MIL No. 10.) Defendants argue that plaintiff's and other incarcerated witness's disciplinary history are relevant to the claims at issue in this case and to the witnesses' credibility. (Dkt. #148, at 11-12.)

As to credibility, conduct reports for lying may be admissible on cross-examination under Fed. R. Evid. 608. *See Wynn v. Adams*, No. 23-cv-364-jdp, 2024 WL 4589485, at *6 (W.D. Wis. Oct. 28, 2024) (Defendants "may question witnesses about whether they have received conduct reports for lying, including the number of times that a witness has received such conduct reports."); *LaBrec v. Syed*, No. 19-cv-804-jdp, 2023 WL 1505603, at *3 (W.D. Wis. Feb. 3, 2023) ("Rule 608(b) allows a party to ask a witness about specific instances of untruthfulness."). However, the court will limit those to such reports *sustained* in the review process only, which will not be admitted into the record but may be used to impeach.

Defendants also argue that plaintiff's conduct report for soliciting a female

correctional officer is relevant and responsive to the question of liability on plaintiff's sexual harassment, pat search, and retaliation claims.   (Dkt. # 137, at 33-34.)  In particular, because plaintiff contends that he was harmed by Melnick's actions and intends to introduce evidence that he was withdrawn, scared, and otherwise mentally unwell in 2022 (dkts. #93, at 4; #124, at1-2), defendants argue that this conduct report for soliciting an officer is relevant to both the existence and severity of plaintiff's alleged psychological conditions.  The report accuses plaintiff of speaking to the officer on two occasions in April 2022, asking for her personal information and telling her that she was the "sweetest" and "cutest" correctional officer at Fox Lake.  The actions described in the conduct report, which occurred during the time Melnick was allegedly harassing plaintiff, call into question whether plaintiff was experiencing "a mental health breakdown, causing him extreme anxiety, panic attacks, sleeplessness, and constant fear," as alleged.  (Dkt. #124, at 2.)

Accordingly, defendants argue that a reasonable jury *could* find plaintiff's soliciting indicates otherwise, or at least that these symptoms were not as severe or constant as plaintiff claims.  Defendants are confusing two evidentiary issues.  At best, the conduct report *might* be used to impeach plaintiff's denial of his alleged conduct, but will not come in as direct evidence nor any administrative review of it.  Even then, the "facts" in the report appear to be nothing more than hearsay.  Nevertheless, the court will RESERVE on the possible use of this specific conduct report until the FPTC.

Finally, as explained further below in connection with plaintiff's MIL No. 7, defendants have failed to proffer any evidence that plaintiff's drug use is relevant, other than as inadmissible bad acts.  Therefore, conduct reports involving plaintiff's drug use will

be excluded.

Accordingly, plaintiff's motion to exclude his disciplinary history is GRANTED, RESERVED and DENIED IN PART as set forth above.  For the same reasons, a ruling on defendants MIL No. 9 is RESERVED until the FPTC, while defendants MIL No. 10 is GRANTED.

### 6.  References to Plaintiff's Criminal History

Plaintiff moves to preclude all references to any of his criminal history, including past criminal charges, arrests, or convictions, pursuant to Federal Rules of Evidence 403 and 609.  Plaintiff argues that the prejudicial effect of admitting evidence of his past convictions, including one for sexual assault that requires him to register as a sex offender, would greatly outweigh the probative value of this evidence, even for purposes of impeachment. (Dkt. #124, at 11-12.)  Specifically, plaintiff seeks to limit defendants to mentioning only the fact that he has been convicted of multiple felonies.  (*Id*. at 12.) Plaintiff further asks the court to follow this procedure with respect to any of his witnesses with criminal records, including James Cansler, Spencer Potts, Stephane Kingue, Richard Garcia, Colin Habram, Casey Thundercloud, and Michael Becker.  (*Id*. at 13.)

In response, consistent with this court's general practice, defendants agree to limit questioning of a witness, including plaintiff, "to the number of relevant convictions that are unrelated to a crime of dishonesty," but note that the fact of plaintiff's felony convictions are admissible as acts of dishonesty:

1. Robbery with Use of Force, contrary to Wis. Stat. § 943.32(1)(a), a Felony E level, convicted on 11/19/2013 (2012CF163);

10

2. Three counts of Burglary-Building or Dwelling (Repeater), contrary to Wis. Stat. § 943.10(1m)(a), a Felony F level, convicted on 11/15/2013 (2012CF121);

3. Bail Jumping, contrary to Wis Stat. § 946.49(1), a Felony H level, convicted on 11/05/2007 (2007CF258);

4. 3rd Degree Sexual Assault, contrary to Wis. Stat. § 940.225(3), a Felony G level, convicted on 10/11/2007 (2006CF347); and

5. Forgery-Uttering, contrary to Wis. Stat. § 943.38(2), a Felony H level, convicted on April 22, 2008 (2008CF77).

(Dkt. #137, at 5-6.)

Unless unduly prejudicial under Rule 403, evidence of previous felony convictions may be admitted for the limited purpose of impeaching a witness's character for truthfulness in a civil case, but only if: (1) the offense was punishable by imprisonment for more than one year; and (2) more than 10 years have passed since the conviction or the witness's release from confinement for it, whichever is older. Fed. R. Civ. P. 609(a)(1), (b). Further, a prior conviction for which the witness has been released from confinement more than 10 years ago is *not* admissible unless: (1) its probative value substantially outweighs its prejudicial effect; and (2) reasonable, written notice of the intent to use it has been provided to the opposing party. Fed. R. Civ. P. 609(b)(1)-(2).

While the first six of plaintiff's convictions (1-4 noted above) are admissible because each involve crimes for which 10 years have not passed since plaintiff's release from confinement for those offenses, defendants concede that more than 10 years have passed since plaintiff's conviction or release from confinement from his forgery conviction (number 5 above). Nevertheless, defendants wish to reference that conviction because it is a crime of dishonesty, (*id*. at 6), quoting Wis. Stat. § 943.38(2): "Whoever utters as

11

genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class H felony."

Thus, defendants propose to ask the following questions of plaintiff during cross-examination:

    1)  You have been convicted of seven felonies, correct?

    2)  One of those convictions was a felony conviction for forgery, correct?

Defendants argument for being allowed to ask specifically about plaintiff's conviction for forgery is its highly probative value in establishing plaintiff's character for lying under Rule 609(b). Defendants rely primarily on *Foster v. Davis*, No. 10 C 6009, 2013 WL 1729417, at *3 (N.D. Ill. Apr. 22, 2013) (admitting a nearly 20-year-old forgery conviction because "the extreme significance of Foster's testimony and the importance of reliably evaluating his credibility in this case . . . substantially outweighs its prejudicial effect"). However, unlike in *Foster*, the court has been offered no specifics as to the nature of plaintiff's crime of forgery or actual sentence and, without any specific facts and circumstances, is unable to weigh whether its probative value substantially outweighs its prejudicial effect. Without this, the court is unwilling to add this older felony conviction as one of seven for which plaintiff has been convicted.

As for plaintiff's argument that defendants' request to reference the actual number of his felony convictions as likely to unfairly prejudice him, this court has regularly rejected this argument in the past as the number of felonies does give weight to the argument that plaintiff's credibility can be questioned. *See Ducksworth v. Kinas*, No. 23-CV-567-wmc,

12

2026 WL 381871, at *1 (W.D. Wis. Feb. 11, 2026) (allowing the defendant to ask the plaintiff about the fact, date, and number of felony convictions).  As for plaintiff's forgery conviction, his "willingness to lie" is also less pertinent here given that Melnick admits making sexually harassing comments that plaintiff complains about, just not with the intent required to constitute deliberate indifference.

Plaintiff's motion is DENIED and RESERVED IN PART, as is defendants' MIL No. 3 regarding plaintiff's criminal history.  Defendants may ask plaintiff whether he has been convicted of seven felonies, but may not specifically reference the nature of any of those convictions or plaintiff's status as a registered sex offender.  Similarly, absent a further proffer by defendants at the FPTC, no mention shall be made of plaintiff's forgery conviction.  Any further inquiry or impeachment as to the nature of these convictions may only be explored if plaintiff denies one of more of these convictions.  The same holds true for defendants' questioning of any inmate witness under Rule 609(a).[1]  These same rulings apply to defendants' MIL No. 3, which seeks to allow questioning of plaintiff and his witnesses about their criminal convictions.

### 7.  Drug Use and Intoxication

Plaintiff also seeks to exclude evidence that plaintiff used drugs before his imprisonment or while in prison.   (Dkt. #124, at 13-15.)  Defendants do not object to excluding criminal convictions, past conduct reports, classification hearing, and medical

---

[1] To the extent that defendants seek to offer evidence of other witnesses' stale felony convictions for dishonesty under Rule 609(b), they would need to make a similar showing as to the specific nature and seriousness of the crime outweighing unfair prejudice outside the jury's presence, and preferably at the FPTC or at least before that witness takes the stand.

evidence that speaks to plaintiff's past and ongoing drug use.  (Dkt. #145, at 17.)

However, defendants argue that plaintiff's motion should be denied as to their own

testimony about beliefs or understanding of plaintiff's possible involvement in drug

possession and use during the relevant time period.  (*Id*. at 17-18.)  Defendants appear to

argue that this testimony – which concerns their belief that plaintiff and other inmate

witnesses were involved in using and moving drugs within the institution -- is relevant to

their understanding and assessment of why inmates were complaining about cell searches

and pat searches.

The court will exclude any testimony about plaintiff's drug use as irrelevant because

this evidence appears to have little or no tendency to make it more or less probable that

plaintiff was subjected to improper harassment by Melnick.  Moreover, while evidence that

a witness has possessed or used illegal drugs while incarcerated might be probative of the

witness's ability to accurately recall events, *United States v. Cameron*, 814 F.2d 403, 405

(7th Cir. 1987), that evidence is only admissible for such a purpose if the party seeking to

offer the evidence draws a direct link between drug use and the events about which the

witness is testifying.  *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008).  Absent such a

link, which defendants will need to proffer at the FPTC, evidence of drug possession or use

serves only to raise the impermissible inference that drug users tend to lie or otherwise

unfairly prejudice plaintiff.  *Id*.  Since defendants have proffered no evidence that plaintiff

was using drugs during any of the specific events he will testify about, they have not drawn

the requisite link to make his drug use relevant to the issue of recall.  Alternatively, even if

this evidence were relevant, the court finds that its probative value is substantially

14

outweighed by the danger of unfair prejudice and confusion of the actual issues before the jury in this case.  Absent a further proffer, therefore, plaintiff's MIL No. 7 s GRANTED.

### 8.  Plaintiff's Unrelated Complaints

Plaintiff next seeks to exclude evidence of a previous complaint he made under the Prison Rape Elimination Act and other complaints he made verbally and in writing during his time in prison.  (Dkt. #124, at 15-16.)  Defendants argue that this evidence is relevant to issues of liability on plaintiff's sexual harassment, retaliation, and failure-to-intervene claims because it shows that plaintiff was aware of the inmate complaint system, how to use the system, and in fact used it frequently to raise issues.  (Dkt. #145, at 19.)

Defendants do not show that plaintiff's previous complaints are sufficiently related to Melnick's alleged misconduct.  Because introducing plaintiff's history of filing complaints may otherwise confuse the jury, the court is inclined to exclude this evidence unless he were to "open the door."  The court will, however, RESERVE ruling on this motion until the final pretrial conference on April 7, 2026.

### 9.  Settlement-Related Evidence

Plaintiff moves to exclude from trial any evidence or testimony about settlement discussions or efforts in this case.  (Dkt. #124, at 17.)  As an example, plaintiff points to deposition testimony from defendant Pollesch, who recounted that plaintiff told her "how the State is trying to settle for a hundred thousand dollars and that is not enough for him, that he's been[seeing] similar cases and they're going for approximately $600,000 and that

he does not intend to settle for less than that amount." (*Id.*)

Evidence of "conduct or a statement made *during* compromise negotiations" about a case is "not admissible -- on behalf of any party -- either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction." Fed. R. Evid. 408 (emphasis added). Defendants contend that the motion should be denied because plaintiff seeks to exclude more evidence than what is contemplated by Rule 408. (Dkt. #145, at 21.) In particular, while defendants agree that the quote from Pollesch's deposition may be prohibited by Rule 408, <u>if</u> the conversation reflected *actual* settlement negotiations ongoing at the time. Based on the timing of plaintiff's comments, however, defendants contest whether the conversation was grounded in the actual numbers exchanged. Regardless, defendants' counsel does not intend to solicit testimony about that conversation, and it *is excluded*.

Defendants do indicate an intent to use email exhibits that could arguably be considered "related" to settlement discussions, but argue these fall outside the restrictions of Rule 408. In particular, defendants point to the following email that plaintiff sent to his girlfriend, saying: "I got them by the balls and they know it." (Def's Ex. 505, at 1). Defendants argue that this statement is admissible over a Rule 408 objection because it does not fit the categories excluded by the rule -- of furnishing, promising, offering, accepting, promising to accept, or offering to accept money; nor is it conduct or a statement made during compromise negotiations. Moreover, to the extent that any other sentences in the email may be inadmissible, defendants offer to redact any statements attributable to settlement negotiations. Defendants note, however, that Rule 408 does not prohibit

evidence of a party's own opinion as to their settlement posture. *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000)

There are two other emails in which plaintiff Sodemann envisions the kind of settlement he will get and writes about what that money will mean. Defendants contend that this content is likewise not excluded by Rule 408, because it is not "furnishing, promising, or offering" or "accepting, promising to accept, or offering to accept money," nor is it "conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408(a)(1)-(2). In the first email sent by plaintiff to his girlfriend on August 20, 2023, plaintiff wrote: "This settlement will help us so so much. Not having to worry about income takes so much stress off us." (Def's Ex. 505, at 4.) In the second email sent by plaintiff to his girlfriend on January 3, 2024, plaintiff wrote:

> Don't get down on things babe. We have everything falling into place. … I have a nice size settlement to us as well Terrie. You'll see. With the money you'll be able to take care of all your affairs before leaving to come here. You can get to the Taylor concert, see your friend get married, get your plane ticket, buy some new clothes for your new home, obviously it would be better to buy most of them here rather than buy all them and [t]hen fly with it all. You [know] what I'm saying though. Jus[t] stay positive Ter. This is going to be the hardest I've always said. The last year is gen the most anxiety creeps in about literally everything. Just fight it and know the most important thing is that I'm on my way home and we have a head start th[at] most others don't have when released. OK babe? Smile for me.

(Def's Ex. 505, at 2). While these two emails contemplate future uses for settlement money (and therefore "relate" to settlement), defendants argue that they do not fall within Rule 408's exclusion because they are not conduct or a statement made during compromise negotiations, or evidence or furnishing, promising, offering, accepting, promising to accept, or offering to accept money. Fed. R. Evid. 408(a)(1) and (2).

17

The problem is the arguable relevance of such statements versus any unfair prejudice this may have in painting plaintiff's motive as purely mercenary. Any guidance from case law that either of the parties might provide would be appreciated, but at this point, the court will RESERVE ruling until hearing from the parties' counsel at the FPTC.

**10. DOC Witnesses as Adverse**

Plaintiff moves to allow leading questions during direct examination of non-defendant DOC employees because they are identified with adverse parties. (Dkt. #124, at 17-18.) "Ordinarily, the court should allow leading questions . . . when a party calls . . . a witness identified with an adverse party." Fed. R. Civ. P. 611(c)(2).

Defendants argue this is an improper subject for a motion in limine, as at least one federal court properly recognized. (Dkt. #145, at 23-24.) *See Jackson v. O'Reilly Auto. Stores, Inc.*, 131 F. Supp. 3d 756, 759 (M.D. Tenn. 2015) ("This issue, however, is not appropriately addressed in a motion in limine. When Plaintiff actually calls particular witnesses at trial, he may explain why they are adverse and ask our permission at that time to use leading questions."). Accordingly, defendants contend that the motion should be denied and that plaintiff should seek the court's permission on an individual basis under Federal Rule of Evidence 611. Given that defendants' counsel will no doubt have met with these witnesses under an attorney client or work product privilege, and plaintiff has likely been denied the same opportunity, the court is skeptical but will at least RESERVE until the FPTC to determine whether leading questions may be appropriate for some of the DOC employees likely to be called to testify.

18

### 11. Jurors' Financial Interests

Plaintiff moves to exclude arguments that appeal to the jurors' financial interest in the outcome as taxpayers potentially responsible for any judgment of damages. (Dkt. #124, at 18-19.) Specifically, plaintiff asks the court to bar "any reference to the pecuniary interests of the jury, including references to the defense attorneys' employment by the Wisconsin Department of Justice." (*Id*. at 19.) In response, defendants agree with the underlying premise that it is not appropriate to appeal to the jury's pecuniary interests and have no intention of making such an appeal. (Dkt. #145, at 24.) However, defendants argue that plaintiff goes too far by attempting to exclude that defense counsel work for DOJ. Regardless, plaintiff has not developed any argument, much less offered any legal authority, about why the court should bar any reference to DOJ, who after all *are* counsel for defendants, an ordinary subject of inquiry during voir dire.

Accordingly, this motion is GRANTED and DENIED IN PART. To clarify, arguments that appeal to the juror's financial interests as taxpayers are precluded. Limited reference to the defense attorney's employment by DOJ is permitted and is to be first introduced in the proposed voir dire.

### 12. Sequester Non-Party Witnesses

Pursuant to Federal Rule of Evidence 615, plaintiff moves to sequester all non-party witnesses from the courtroom during witness testimony. (Dkt. #124, at 19.) This motion is GRANTED as unopposed although the court would entertain an exception for either side's retained expert witnesses.

### 13. Testimony by Videoconference

Plaintiff moves to allow his expert witness, James Ferreira, who lives in Massachusetts, to testify by Zoom. (Dkt. #124, at 19-20.) This motion is also GRANTED as unopposed. Plaintiff's counsel is directed to contact the clerk's office to make the necessary arrangements in advance of trial. Both sides are directed to provide any witness appearing remotely with any exhibits that may need to be viewed during direct or cross examination, as well as ensure *all* proposed exhibits have been filed in Box.com in advance of the FPTC for review at that time *and* possible use with any remote witness at trial.

### 14. Street Clothes

Plaintiff requests permission to wear street clothes at trial, rather than prison garb. (Dkt. #124, at 20.) This motion is GRANTED as unopposed.

Consistent with the court's procedures, plaintiff will need to arrange for clothes to be available for him by asking a family member or friend to either mail or deliver clothing to his counsel or directly to the office of the Clerk of Court, 120 N. Henry Street, Room 320, Madison WI 53703, to ensure receipt and screening by the court no later than 4:30 p.m. on the Thursday before trial.

## B. Defendant's Omnibus Motion in Limine (dkt. #137)

### 1. Other Legal Proceedings

Defendants move to preclude evidence of "the existence or details of any other legal cases in which they have been involved, or other inmate grievances not related to this case." (Dkt. #137, at 1-3.) Generally, defendants contend that other lawsuits brought against

them are irrelevant and inadmissible as improper propensity evidence under Federal Rule of Evidence 404(b).

Plaintiff argues that this motion should be denied as too vague because defendants do not specify the legal proceedings or grievances to be excluded (dkt. #151, at 1-2), but this is a bit disingenuous given that *plaintiff's counsel* would be introducing any such evidence.  More specifically, plaintiff argues that evidence of other inmate grievances by plaintiff and other Fox Lake inmates Colin Habram, Stephane Kingue, and Michael Bates against defendant Melnick are relevant to whether Miller had adequate notice of Melnick's harassing behavior to create a duty of inquiry and protection sooner.  (*Id*. at 2-4.)  Plaintiff does not otherwise contest the motion as it pertains to inmate complaints against Miller, unless defendants open the door to such evidence.  (*Id*. at 4.)  Likewise, plaintiff purports to be unaware of other prisoner complaints or lawsuits involving defendant Pollesch and does not intend to introduce any such evidence at trial.  (*Id*.)

Unless tied to proof that any of these incidents, grievances or legal proceedings *were* brought to defendants Miller's or Pollesch's attention *before* at least some of Melnick's alleged acts against plaintiff Sodeman, such evidence does seem to be offered as proof of Melnick's propensity to commit similar acts as claimed by plaintiff.  Regardless, because it is unclear both what other legal proceedings or grievances plaintiff seeks to proffer or defendants seek to exclude, the court RESERVES ruling on the motion until the FPTC on April 7, 2026.

### 2. Other Lawsuits or Investigations

Defendants also seek to preclude more broadly any argument, questions, testimony

or evidence regarding the details of lawsuits relating to DOC or its current or former employees. (Dkt. #137, at 3-5.)   Plaintiff again argues that this motion should be denied because it is unclear what defendants seek to exclude, although this is even more in the realm of plaintiff's counsel to identify.   (Dkt. #151, at 4-5.)

Certainly, as plaintiff notes, this court has rejected similarly vague request in other § 1983 cases. *E.g., Turner v. Rataczak*, No. 13-cv-48-jdp, 2014 WL 5023095, at *2 (W.D. Wis. Oct. 8, 2014) ("Neither side explains which witnesses or what lawsuits are the subject of the motion. Although the court will be reluctant to allow evidence of lawsuits against other DOC officials, the motion to exclude is DENIED because it is vague.").   More specifically, plaintiff speculates that defendants may be seeking to exclude evidence that one of plaintiff's inmate witnesses, Colin Habram, has filed a similar lawsuit against defendants Melnick and Pollesch, alleging that Melnick sexually harassed him and that Pollesch failed to intervene. *Habram v. Melnick*, No. 24-cv-733 (W.D. Wis.).  Plaintiff also speculates that defendants wish to exclude evidence of misconduct by another officer who is *not* a defendant. (Dkt. #151, at 6.)   Specifically, while Melnick was allegedly sexually harassing him, plaintiff maintains that he was aware of another officer, identified as "Wouts," who groomed, exploited and raped other male prisoners at Fox Lake Correctional Institution. (*Id*. at 6-7.)   However, because it is again unclear what other lawsuits or investigations plaintiff may seek to proffer or defendants seek to exclude, the court RESERVES ruling on this motion until the FPTC.

### 3. Criminal History

Defendants seek to allow questioning of plaintiff (and his witnesses, if applicable)

22

about their criminal convictions. (Dkt. #137, at 5-7.) This motion is GRANTED and DENIED IN PART for reasons already discussed previously in ruling on plaintiff's MIL No. 6.

### 4. Indemnification

Defendants seek to exclude evidence that they may be indemnified for any judgment against them. (Dkt. #137, at 7-8.) As a general rule, "courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government -- not the individual defendants -- is footing the bill." *Lawson v. Townbridge*, 153 F.3d 368, 379 (7th Cir. 1998); *see also Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible"). An exception exists where a defendant pleads poverty, but defendants argue that this exception is inapplicable because they do not intend to present evidence of or argue the individuals' inability to pay. (Dkt. #137, at 8.) Based on defendants' representations, plaintiff does not oppose the motion. (Dkt. #151, at 10.) Therefore, this motion is GRANTED. If defendants introduce any evidence or argument suggesting that they are unable to pay a judgment, plaintiff may, of course, ask the court to revisit the issue at sidebar or otherwise outside the jury's presence.

### 5. Plaintiff's Retaliation Claim

Defendants next move to dismiss plaintiff's First Amendment claim that defendant Melnick retaliated against Sodemann after he threatened to file a complaint about his mistreatment. (Dkt. #137, at 8-16.) To prevail on a retaliation claim under the First

23

Amendment, a prisoner must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Even if plaintiff can satisfy each of these elements, defendants assert that Melnick is entitled to qualified immunity because the law is uncertain as to whether *threatening* to file a grievance is an activity protected by the First Amendment. (*Id.*)

Qualified immunity protects a government official from liability for civil damages unless the plaintiff shows that "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A clearly established right is one "that every reasonable official would have understood" he is violating." *Reichle*, 566 U.S. at 664. Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Unlike most affirmative defenses, however, *plaintiff* bears the burden of proving a law is clearly established. *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). In an effort to meet that burden here, plaintiff points the court to *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006), in which the Seventh Circuit held that a prisoner's oral

24

complaints to prison officials about the conditions of his confinement were protected by the First Amendment.  Specifically, the Seventh Circuit held "a reasonable public official . . . would understand that retaliating against a prisoner on the basis of his complaints about prison conditions is unlawful."  *Id*. at 742.  Just as in *Pearson*, plaintiff argues that the statement he made to Melnick, which allegedly motivated Melnick's retaliatory response, was as follows:  "Melnick, you need to stop saying this.  You need to stop with all this, saying this all gay stuff to me . . . [b]ecause I'm already going to turn you in if you continue."  (Dkt. #151, at 11 (citing Sodemann Dep. (dkt. #65) 196:1-9).)

Accepting plaintiff's version as true, however, his statement to Melnick materially differs from that in *Pearson*, where the plaintiff claimed retaliation for actually making a complaint about his conditions of confinement, while here it was Sodemann who complained and threatened to file a grievance against Melnick about his harassment. Indeed, in another case involving a prisoner who similarly threatened to file a grievance against an officer for harassment, the Seventh Circuit rejected the prisoner's reliance on *Pearson*, finding it "implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance."  *Bridges*, 557 F.3d at 555 (emphasis in original).  Thus, although filing a grievance or lawsuit *is* clearly protected activity after *Pearson*, the Seventh Circuit has now repeatedly declined to rule that threatening to file a grievance or lawsuit is protected activity.  *See Reed v. Bowen*, 769 F. App'x 365, 370 (7th Cir. 2019) ("We have not ruled that threatening to file a lawsuit is protected activity.");  *Davenport v Szczepanski*, 704 F. App'x 602, 603 (7th Cir. 2017) ("Although '[a] prisoner has a First Amendment right to make grievances about conditions of confinement,' . . . merely *threatening* to file a

grievance against someone is not protected activity." (emphasis in original, citation omitted)). Given the continued uncertainty on this question, this court has granted qualified immunity to a defendant facing a claim of retaliation under the First Amendment in response to a prisoner's mere threat to file a grievance, rather than actually filing a grievance, which *is* protected from retaliation. *Gill v. Miller*, No. 23-CV-739-WMC, 2026 WL 194681, at *4-5 (W.D. Wis. Jan. 26, 2026); *see also Childs v. Rudolph*, No. 22-CV-572-JDP, 2024 WL 639859, at *3 (W.D. Wis. Feb. 15, 2024) (noting that "courts of this circuit have suggested that [threatening to file a grievance] is not protected activity") (collecting cases for this proposition).

None of plaintiff's other arguments on the subject are persuasive. Having failed to present authority that places the constitutional question beyond debate, *al-Kidd*, 563 U.S. at 741, defendant Melnick is entitled to qualified immunity from plaintiff's First Amendment retaliation claim. Therefore, defendants' motion in limine is GRANTED and plaintiff's First Amendment retaliation claim will be DISMISSED with prejudice absent proof that Melnick materially retaliated because of plaintiff's actual filing of a grievance against him.

### 6. Compensatory Damages

Plaintiff allegedly suffered anxiety, panic attacks, and insomnia after Melnick verbally abused him in 2021 and 2022, and he continues to suffer anxiety and sleeplessness. Defendants argue that plaintiff should be precluded from seeking compensatory damages for all but his pat-search claim because he lacks evidence of any physical injury, other than the physical manifestation of emotional harm, which is not

compensable under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).  (Dkt. #137, at 16-28.)[2]  Accordingly, defendants argue that plaintiff's evidence establishes, at most, physical manifestations of emotional distress.

In its opinion denying defendants' motion for summary judgment on this issue, the court found that because "plaintiff has presented some evidence that prolonged, persistent sexual harassment by defendant Melnick caused extreme anxiety, panic attacks, and insomnia on a sustained basis, for which plaintiff sought medical attention . . . , compensatory damages may still be available."  (Dkt. #110, at 27-29.)   Several other district courts within the Seventh Circuit have reached similar conclusions, although most of these decisions dealt with allegations at the pleadings stage.  *E.g., Smith v. Dart*, No. 20-cv-1381, 2020 WL 7260802, at *4 (N.D. Ill. Dec. 10, 2020) (sleep deprivation from lack of CPAP machine to treat sleep apnea); *Cotledge v. Dart*, No. 20-cv-2629, 2020 WL 7260798, at *4 (N.D. Ill. Dec. 10, 2020) (same); *Green v. Dart*, No. 20-cv-1459, 2020 WL 7260800, at *4 (N.D. Ill. Dec. 10, 2020) (same); *Love v. Godinez*, No. 15-cv-11549, 2018 WL 2096375, at *4 (N.D. Ill. May 7, 2018) (loss of sleep requiring medical treatment for resulting stress and sleep deprivation); *Gurley v. Sheahan*, No. 06-cv-3454, 2009 WL

---

[2] This provision states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e).  Plaintiff has made no claim of any "sexual act" as defined by 18 U.S.C § 2246 in this case.

2178685, at *7 (N.D. Ill. July 21, 2009) (sleep deprivation and headaches).[3]   Most recently, this court denied summary judgment on a prisoner's claim for compensatory damages in a similar case involving allegations of persistent verbal harassment.  *See Peters v. Hendrickson*, No. 23-cv-232-wmc, 2025 WL 3641161, at *6 (W.D. Wis. Dec. 15, 2025) (noting that plaintiff had testified "that he suffered nausea, vomiting, insomnia, and panic attacks, and sought treatment from a mental health professional due to defendant Schwanz's harassment, the other defendants' inaction, and other inmate's verbal threats," which were "sufficient to allege more than a negligible physical injury at this stage").

However, to date, neither party has offered any medical records showing that defendants' actions caused or failed to cause plaintiff to suffer at least some physical harm. *See Hacker v. Dart*, 62 F.4th 1073, 1079 (7th Cir. 2023) ("To satisfy § 1997e(e), prisoners must show an injury that is more than negligible although not necessarily significant."); *see also Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (holding in the excessive-force context that a plaintiff can still prevail on an Eighth Amendment claim with no more than a *de minimis* injury, though "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover").  Whether plaintiff can present evidence that is sufficient to show that compensatory damages are available is generally a matter for trial.  *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("Gray's summary judgment materials, we

---

[3] In fairness, there is also contrary authority.  *See Shaw v. Wall*, No. 12-cv-497-wmc, 2015 WL 1925045, at *2-3 (W.D. Wis. Apr. 28, 2015) (granting defendant's motion in limine on a prisoner's claim for compensatory damages for emotional distress manifesting itself physically, but no physical injury occurred) (collecting cases holding that physical manifestations of mental or emotional injuries cannot satisfy § 1997e(e)); *see also Pearson*, 471 F.3d at 744 (rejecting a prisoner's attempt to claim physical injury based on his own testimony that he was "mentally and physically depressed" and "lost at least 50 pounds").

conclude, present triable issues of fact for a jury, which must determine the degree of both physical and psychological harm he suffered as a result of the [conditions of his confinement]. If the jury finds that Gray suffered only psychological harm, he will be limited to nominal and punitive damages.").  Accordingly, defendants' motion in limine on plaintiff's claim for compensatory damages is DENIED, although the court invites any additional, recent and relevant case law on the subject, and defendants may raise the issue again at the close of plaintiff's case should he fail to present any proof that his emotional distress caused him to suffer physical harm.

### 7.  Undisclosed Medical Records

Defendants seek to preclude plaintiff from arguing he suffered a physical injury if he does not produce his Health Services Unit records.  (Dkt. #137, at 28-29.)  Defendants filed a motion to compel the records, and Magistrate Judge Boor ruled in their favor.  (Dkt. #139.)  Because the requested records have now been produced, plaintiff argues that this motion is now moot (dkt. #151, at 21), and the court agrees.  While defendants' motion is, therefore, DENIED to the extent that any requested records have not been produced in compliance with Judge Boor's order, the parties may address this issue at the FPTC.

### 8.  Lay Witness Testimony

Defendants seek to preclude improper medical evidence or lay witness testimony about plaintiff's medical issues.  Under Rule 701, lay witnesses may not offer opinion testimony if it is based on scientific, technical, or other specialized knowledge[.]"  Fed. R. Evid. 701.  Here, defendants request an order precluding plaintiff from:  (1) testifying

29

about his mental health "beyond what a lay person can identify about their own health," including testifying that he suffered from panic attacks and insomnia caused by Melnick's abuse; (2) arguing or presenting evidence that his emotional injuries extended beyond Melnick's resignation in May 2022; and (3) arguing or presenting evidence that he will suffer future harm because of Defendants' misconduct.

As to the first request, plaintiff responds that he does not intend to offer expert testimony or testify that he was diagnosed with any medical condition as a result of defendants' misconduct. (Dkt #151, at 21.) As plaintiff correctly notes, he is "entitled to testify to such physical injury, pain, and emotional suffering he claims to have experienced as a result of any [constitutional] violations" for which defendants are found liable. *Coleman v. Sperry*, No. 21-cv-65-wmc, 2024 WL 1521441, at *3 (W.D. Wis. Apr. 8, 2024) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 865 (7th Cir. 2010)). Thus, plaintiff is allowed to testify about how and why he attributes his physical injury, pain, or emotional distress to defendants' actions (or inaction where Miller and Pollesch are concerned). Having said that, while plaintiff may testify to new or more intense experiences of injury following defendants' actions or inactions, causation is for the jury to decide.

As to the second request, plaintiff is allowed to testify about any harm he continues to suffer as a direct result of defendants' misconduct even after Melnick's resignation. *See Lacy v. McArdle*, No. 20-cv-1014-jdp, 2023 WL 4581759, at *11 (W.D. Wis. July 18, 2023) (denying motion to bar evidence of a prisoner's future damages because "[a] jury may or may not find [plaintiff's] proposed testimony [about future damages] persuasive, but the court will not bar [him] from giving that testimony. . . . '[E]xpert testimony is not

30

required if lay testimony forms a sufficient basis for the jury to consider a claim based on future pain and suffering.' That is the case here."). Still, having indicated that he does not intend to seek future compensatory damages, that testimony should be brief.

Finally, plaintiff does not contest defendants' third request to exclude evidence of future emotional distress, having disavowed a claim for compensatory damages for any injuries he may continue to experience after trial. Accordingly, this motion is GRANTED and DENIED IN PART.

### 9. Plaintiff's Conduct Report for Soliciting

Defendants' motion to allow questioning about plaintiff's conduct report for soliciting a female correctional officer (dkt. #137, at 33-34) is RESERVED for reasons discussed previously in a ruling on plaintiff's MIL No. 5 above.

### 10. Plaintiff's Conduct Report for Lying

Defendants' motion to allow cross-examination of plaintiff and any other identified inmate witness about conduct reports they have received for lying (dkt. #137, at 35) is GRANTED for reasons also discussed previously in ruling on plaintiff's MIL No. 5.

### 11. Melnick's Medical Diagnoses

Defendants seek to introduce evidence "through testimony" as to defendant Melnick's personal observations about his own mental health in 2021 and 2022. (Dkt. #137, at 136.) Specifically, Melnick recently represents that he has been diagnosed with ADHD and a genetic disorder known as Bannayan-Riley-Ruvalcaba Syndrome that "shares neurobehavioral features with Autism Spectrum Disorder." (*Id*.)

Plaintiff argues that this evidence should not come in because none of it was disclosed during discovery, including plaintiff's repeated requests that would have called for the disclosure of any "defense" or "defenses" to the claims against him and response to questions at his deposition about the reasons for his conduct. (Dkt. #151, at 28-29.) Because defendants never supplemented their document production or interrogatory responses to disclose the defense that Melnick's diagnosed conditions may have impacted his thinking or behavior, plaintiff argues that this evidence is not allowed by Federal Rule of Civil Procedure 37(c)(1). Plaintiff argues further that the request should be denied because it seeks permission to admit expert testimony about medical diagnoses through Melnick. (Dkt. #151, at 30.)

Whether these requests created a duty to disclose any medical diagnosis is open to debate, especially since neither diagnosis would on their face appear to be any defense at all, but defendant certainly seems to have "hidden the ball" as to his ability to understand the impact of his conduct on others. Even if plaintiff failed to specifically request medical files from Melnick, he faces the same problem as plaintiff. Melnick would be escorting in medical opinions by hearsay unless medical reports themselves came in and defendants have yet to offer any, though they now promise to do so. More fundamentally, as plaintiff also points out, Melnick is in no position to testify as to the importance, if any, that either diagnosis may have had on his ability to display the requisite "deliberate indifference." If admissible at all, that would be the role of a psychiatric expert. Since it is far too late for disclosure of experts, this testimony and any related argument is more likely to confuse the jury than it is to assist. Therefore, the motion is DENIED, although defendants' counsel

32

will have an opportunity to raise this issue at the FPTC.

### 12. Demonstrative Video

Defendants seek to use and publish to the jury the first ten minutes of a demonstrative video depicting an approved DOC pat search procedure. (Dkt. #137, at 36.) Defendants intend to offer the video for the limited purpose of illustrating witness testimony regarding the pat search procedures, subject to Fed. R. Evid. 107. (*Id.*)

Plaintiff argues that the video is inadmissible as "substantive evidence" because defendants never disclosed it during discovery, despite a document request asking for any materials defendants might use to support their case. (Dkt. #151, at 31.) Plaintiff argues further that the video is inadmissible as demonstrative evidence because it does not satisfy Fed. R. Evid. 107. (*Id.* at 32-34.) As to the latter, the court agrees that the video is needlessly long and potentially misleading in its sanitized, belabored presentation of a pat down. Therefore, the motion is DENIED as to the current video, although defendants may offer an edited down version before the FPTC.

### 13. Claims Previously Dismissed

Defendants seek to exclude evidence concerning claims that were previously dismissed. (Dkt. #137, at 37-38.) Plaintiff does not oppose the motion, while noting that no *claims* were dismissed at summary judgment, only certain of defendants' affirmative defenses. (Dkt. #151, at 34.) For reasons set forth above in Defendant's MIL No. 5, the court may still dismiss plaintiff's First Amendment retaliation claim against Melnick.

This motion is GRANTED with the following clarification:  Neither party may discuss *claims or defenses* that were dismissed or rejected on the merits earlier in this case or make arguments inconsistent with those rulings. However, both parties may elicit testimony regarding *relevant* facts surrounding the circumstances of the defendants' conduct involving plaintiff, whether or not also related to the claims or defenses previously dismissed.

### 14. Plaintiff's Expert Testimony

Defendants seek to exclude certain opinion testimony from plaintiff's expert, James Ferreira, who worked in the field of adult institutional corrections in the Commonwealth of Massachusetts before 2020.  (Dkt. #137, at 38-53.)  Specifically, defendants seek to exclude the following to exclude portions of Ferriera's opinion testimony:

> • Opinion No. 1: Staff sexual harassment, as Sergeant Melnick did to Mr. Sodemann, puts the harassed offender at risk.
> • Opinion No. 2: Staff sexual harassment, as Sergeant Melnick did to Mr. Sodemann, puts staff and other offenders at risk.
> • Opinion No. 3: These risks are so serious that the federal government and prisons have detailed rules about them.
> • Opinion No. 4: Prison administrators' reactions to Sergeant Melnick's conduct show how serious it was.

(*Id*. at 38) (citing Dkt. 99:5-7).)  Defendants also seek to exclude Ferreira providing his ultimate conclusion:  "Sergeant Melnick's misconduct placed Mr. Sodemann at substantial risk and danger of suffering serious harm." (*Id*. (citing Dkt. 99:7).)

Plaintiff argues that Ferreira's proposed testimony is appropriate and necessary to combat Melnick's defense that he was "just joking" and intended no harm.  (Dkt. #151, at 34-40.)  The court generally agrees, at least to the extent that Mr. Ferreira may be helpful

to the jury's understanding as to the dynamic and potential dangers between officers and inmates, especially with respect to sexual matters, although he will obviously *not* be testifying about what *Mr. Melnick* did but rather what he understands the evidence will show. In particular, it is for the jury to decide what Melnick actually did or did not do, and why any actions were or were not undertaken by defendants in response. With this caveat, this motion in limine is DENIED.

## 15. Disclosures in Expert Report

Finally, defendants seek to exclude testimony from Ferreria on matters outside of those disclosed in his expert report dated March 6, 2024. (Dkt. #137, at 53.) Not only does plaintiff represent that no undisclosed expert evidence will be introduced at trial, this is the court's standard practice consistent with Fed. R. Civ. P. 26(a)(2). Therefore, the motion in limine is MOOT.

ORDER

IT IS ORDERED that:

1. Plaintiff's omnibus motion in limine (dkt. #124) is GRANTED, RESERVED and DENIED IN PART as set forth above.

2. Defendants omnibus motion in limine (dkt. #137) is GRANTED, RESERVED and DENIED IN PART as set forth above.

Entered this 2nd day of April, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

35